## In re HIRSHOWITZ.

(District Court, M. D. Pennsylvania. March 27, 1912.)

### No. 1,543.

BANKRUPTCY (§ 408*)—DISCHARGE IN BANKRUPTCY—MISCONDUCT OF BANK-
RUPT.

A bankrupt, who within a few months of his adjudication in bank-
ruptcy, and while insolvent, purchased on credit merchandise consisting
of personal ornaments and gave them to his wife, without any intention
to pay for them, and who did not include in his schedules considerable
valuable property, with intent to hinder his creditors, and who within
a month or two prior to the adjudication established branch stores to
which he moved large quantities of merchandise, and who instructed his
agents to sell the same at any price, even below cost, if necessary, and
who never kept any account of such merchandise or the proceeds thereof,
except slips indicating the amount of sales and the goods sold, and who
destroyed such slips before the adjudication, disposed of property with
intent to defraud his creditors and destroyed records of his financial con-
dition in violation of the statute, and he was not entitled to his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736,
759, 762, 763; Dec. Dig. § 408.*]

In the matter of the bankruptcy of Louis Hirshowitz, bankrupt.
Heard on exceptions to the report of the master recommending the
discharge of the bankrupt. Sustained, and discharge denied.

David Rosenthal, for bankrupt.
Wm. N. Reynolds, for exceptions.

WITMER, District Judge. Every bankrupt coming into court, in-
voking its aid for relief from his obligations, must come with clean
hands and show that his conduct has been that of an honest, upright
man, and that he is entitled to the advantages which the act confers.

The bankrupt should do all within his power to aid and assist the
court in determining the matters and facts surrounding his business
so as to facilitate the administration of his estate for the benefit of
his creditors. He should not willfully do anything tending to delay,
hinder, or obstruct such in any manner whatsoever.

Although the learned master recommended the discharge of Louis
Hirshowitz, the bankrupt, we cannot, after a careful examination of
all the evidence, agree with his conclusions, and therefore decline to
adopt his recommendation. The bankrupt, who is here seeking a dis-
charge, was a most reluctant witness; his attempts at evasion
amounted to almost obstinacy; his contradictions and inconsistencies
were many and flagrant; in truth, his entire testimony seems to be
tainted with insincerity.

There can be no doubt, however, that, at the time of filing his
schedules, he had in his dwelling some goods and merchandise which
he did not include in his schedules. He contends that these articles
of merchandise were not secreted or withheld for the purpose of
hindering, delaying, or defrauding his creditors, that he had purchased
them and presented them as a gift to his wife in good faith, and it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Is argued that he had a legal right to do this. By this process of reasoning, the bankrupt would have been permitted to give away to members of his family all his property without committing a technical violation of the statute, because he alleges there was no malus animus. Most of the goods was purchased within two months prior to his adjudication, at a time when he was hopelessly insolvent, the merchandise so presented was not paid for, and there evidently was never an intention on the part of the bankrupt to pay, and while his creditors were eagerly awaiting the compensation justly due them, the bankrupt presented the unpaid property to members of his family. I am unable to conclude, from these circumstances, reluctantly admitted by the bankrupt himself when he was confronted with the facts, that the goods were not disposed of or secreted for the purpose of hindering, delaying, or defrauding his creditors.

It is not necessary to resort to deduction, as has been urged, to conclude that the "bankrupt concealed, removed, or destroyed property to the value of upwards of $17,000," because there is that which is certain. The bankrupt did not include in his schedules considerable valuable property consisting of cut glass, a lamp, opera glasses, punch bowl, gas dome, chafing dish, and numerous other articles, with the undoubted intent to hinder, delay, and defraud his creditors, and although these items do not approach the sum charged, it matters little whether the amount be large or small, it is, nevertheless, an offense against the statute. But it may be fairly deduced, in the light of all the evidence, that not all the property concealed has been discovered. The bankrupt only made such admissions as he was compelled to do, after he was detected. He made no confession, and in view of the fact that the concealment was made in secret, it is exceedingly improbable that all the secreted merchandise was discovered.

Within a month or two prior to the adjudication, he established at least two branch stores or stations in neighboring towns, where he moved large quantities of goods and merchandise, and instructed his agents to sell the same at any price, even below cost, if necessary. He never kept any account of this merchandise or the proceeds thereof. That he might be able to check the sales, so he alleges, his agents were required to return to him slips indicating the amount of the sales and the goods sold. These slips, although they practically contained a correct record of the goods and the amount of sales, were destroyed by the bankrupt before his adjudication, so that the only available account of these transactions were thus wholly extirpated, and the bankrupt is unable to account for the proceeds received from these sales as well as for the proceeds of the store. Even if these slips were destroyed with an honesty of purpose, the bankrupt could not have selected a more opportune moment for self-preservation, nor a more unfortunate moment for the interest of his creditors, because they were deprived of the last vestige of written evidence that might lead to the recovery of assets that rightfully belonged to them. It even precluded a proper examination of the bankrupt. It is conceded that the bankrupt is a good business man, and to within a short period prior to the filing of the petition was successful, yet he kept no books

that would tend to explain the disposition of merchandise aggregating many thousands of dollars, which he disposed of in some manner, within the last two or three months prior to his adjudication. The greater portion of this merchandise was purchased on credit within four or five months immediately preceding his adjudication and not paid for, and the bankrupt could not have been ignorant of the fact that he was hopelessly insolvent at the time he made these purchases. I cannot determine that the slips were destroyed without any ulterior or improper motive.

The bankrupt, having destroyed or concealed records from which his financial condition might be ascertained, with intent to conceal such condition, and having, subsequent to the first day of the four months immediately preceding the filing of the petition, transferred, removed, or concealed, or permitted to be removed, destroyed, or concealed, some of his property with intent to hinder, delay, or defraud his creditors, is not entitled to his discharge.