### In re HODGE.

(District Court, N. D. New York.   June 9, 1913.)

1. BANKRUPTCY (§ 409*)—GROUNDS FOR REFUSAL OF DISCHARGE—DESTRUCTION OF "RECORDS."

   Where a bankrupt kept no books of account, but did keep a bank account, his canceled checks and the stubs in his checkbooks constitute "records" from which his financial condition can to some extent at least be ascertained, and under Bankr. Act July 1, 1898. c. 541, § 14b(2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), his destruction of such records shortly before his bankruptcy and when insolvent, no adequate reason therefor being shown, may properly be held to have been with intent to conceal such condition and to debar him from the right to a discharge.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*

   For other definitions, see Words and Phrases, vol. 7, pp. 6008–6014; vol. 8, p. 7781.]

2. APPEAL AND ERROR (§ 1019*)—FINDINGS OF REFEREE—WEIGHT.

   The findings of a referee, who heard the witnesses on conflicting evidence, or when different inferences may be drawn from a conceded state of facts, are entitled to the same consideration as those of a district judge and should be reversed only in clear case of error.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4008–4010; Dec. Dig. § 1019.*]

In the matter of Herman T. Hodge, bankrupt.   On opposing motions to confirm report of referee recommending denial of a discharge

and to set aside such report and grant a discharge. Report confirmed and discharge denied.

Chapman & Mott, of Watertown, N. Y., for objecting creditor.
Curtis L. Hildreth, of Watertown, N. Y., for bankrupt.

RAY, District Judge. [1] Section 14b of the Bankruptcy Act provides that the judge shall hear the application for a discharge, etc., and discharge the bankrupt "unless he has * * * (2) with intent to conceal his financial condition, *destroyed,* concealed or failed to keep books of account *or records* from which such condition might be ascertained." It is no longer necessary to show that the failure or destruction were "in contemplation of bankruptcy" or with a "fraudulent" intent to conceal the financial condition. Collier on Bankruptcy (9th Ed.) 349. See amendatory act of 1903, dropping these words.

The specifications of objection to the discharge of Herman T. Hodge, this bankrupt, specifically charge against him not only a failure to keep, but a destruction of, books of account *and records* from which his financial condition might be ascertained "with intent to conceal his financial condition."

The referee to whom this matter was referred took the evidence and saw and heard the witnesses and finds and reports, amongst other things, "that with intent to conceal his financial condition the bankrupt destroyed his canceled and paid checks and the stubs thereof and failed to keep books of account or records from which such condition might be ascertained," and also "that the bankrupt's application for a discharge should be denied." The bankrupt concedes that he kept no books of account except a bank book, checkbook with stubs showing the purpose for which checks were drawn and to whom payable, and that a few months prior to filing his petition in bankruptcy he took from this bank all his paid checks and took them with such stub book to his cellar, where he willfully destroyed them. Transcripts from the books of the bank show deposits and when made and also the amount of withdrawals by check and date of payment, but not the names of the payees.

Herman T. Hodge, the bankrupt, was a contractor and builder; a man of intelligence and considerable experience and able to figure, read, and write, draw checks, and keep accounts of his transactions if he desired so to do. If a "stub book" is not a book of account in the strict sense, it is at least a "record" which shows checks drawn, their date, amount, and to whom payable. It is a record from which the financial condition of the one who keeps the bank account may, to some extent at least, be ascertained. Their intentional destruction, in the absence of regular books showing details, is the destruction of books and *records* from which the financial condition of the bankrupt might be ascertained. When no other books of account or records of financial transactions are kept, such a stub book with the paid checks become "a record" and, so far as they go, the equivalent of a book of account. The checks show to whom the money was paid, when drawn, etc., and with proper indorsements become vouchers for the payment of money. Their destruction with intent to conceal financial condition

will defeat discharge. Godshalk Co. v. Sterling (C. C. A. 3d Circuit) 12 Am. Bankr. Rep. 302, 129 Fed. 580, 64 C. C. A. 148; In re Hirshowitz (D. C.) 27 Am. Bankr. Rep. 701, 194 Fed. 562.

When no other books or records of financial transactions are kept, the checks and bills become of great importance, and no sane and honest business man will willfully destroy them unless at a time so remote from the transactions to which they relate that ordinary prudence would not require their preservation.

Hodge was adjudicated a bankrupt on a petition filed by him February 22, 1911. Up to April 15, 1910, he was in partnership in the same business with one Fred A. Caswell. While in partnership the firm kept books of account, and it is fair to say Hodge knew the necessity of keeping books and their purpose and value. After the dissolution of the partnership Hodge kept no books. Between January 19, 1910, and September 24, 1910, Hodge deposited to his own credit in the City National Bank of Watertown, N. Y., in 17 different items and at different dates the sum of $5,180. Between January 20, 1910, and October 13, 1910, inclusive, he withdrew and paid out by his personal checks drawn on these deposits the sum of $5,178.60. He produced checks to the amount of $128.50 drawn between September 17 and October 8, 1910, which had not been surrendered by the bank. He does not tell when and to whom the checks not produced but destroyed were given or for what. There is no good or adequate excuse given for the destruction of this stub book and these checks. The evidence shows conclusively and beyond any question whatever that he was hopelessly insolvent at the time and knew it. He was owing some $8,000 at least, and his assets were $401 at the time his petition was filed. If he had any property at the time with which to meet his then existing indebtedness, or come within thousands of dollars of it, he does not disclose what it was or what had become of it. He does not account for it by losses in business.

It is quite true that a mere failure to keep books or records or the mere destruction of those kept is not sufficient to justify the court in refusing a discharge. There must be circumstances and conditions from which the inference ought to be drawn and necessarily should be drawn that such failure or destruction was "with intent to conceal his financial condition." Here no other inference can reasonably be drawn from the destruction of this stub book and these paid checks. It is evident that the now bankrupt, then bankrupt in fact, destroyed these records, stub book, and checks for the purpose of concealing from his creditors the disposition he had made of this money. There was no other reason for the act. If he paid it out to creditors, workmen, or for material, he knew where the most of it went and he should have shown where it went and for what purpose. Having no other vouchers for the payment of this money and owing as he was at least $8,000 aside from a so-called Orpheum debt of about $9,000, it was essential that he keep these checks to show payments to such creditors as had been paid by check. Under such circumstances, a mere general statement of the bankrupt is not sufficient to show absence of intent to do that which the act itself, under the circumstances shown, necessarily

results in. A sane intelligent man is presumed to intend the natural, probable, and well-known consequences of his own willful acts. See In re Marcus & Scherr (D. C.) 27 Am. Bankr. Rep. 164, 192 Fed. 743.

It is quite true that one object of the Bankruptcy Law, not its main object, is to release honest but unfortunate debtors from their debts, except those of certain classes, and enable them to start in business anew. But this is not to be done unless the person seeking to avail himself of the benefits of the law has complied with all its terms and conditions. He is not to have its benefits unless he surrenders all his property for the benefit of his creditors, aside from that exempt, and he cannot prepare himself for bankruptcy by disposing of his property in other ways than paying his necessary living expenses, his just debts and obligations, and by then concealing his disposition of it and by knowingly and intentionally destroying the only existing evidence in writing of such disposition, and thereupon have a discharge. To grant discharges in such cases would encourage fraud and dishonesty and discredit the law.

[2] As I have stated, the referee, acting as special master, saw and heard all the witnesses and is presumed to have noted their manner and judged of their credibility and truth. True, the burden of proving the allegations of the specifications of objection was on the objecting creditor; but, when the referee had heard all the testimony and read the exhibits and weighed same, it was for him to draw inferences and decide, and in clear case of error only should the judge interfere with such findings. In re Knaszak (D. C.) 18 Am. Bankr. Rep. 187, 151 Fed. 503; In re Forth (D. C.) 18 Am. Bankr. Rep. 186, 151 Fed. 951. The referee's findings upon conflicting evidence, or when different inferences may be drawn from a conceded state of facts, are entitled to the same consideration as those of a district judge. In re Simon & Sternberg (D. C.) 18 Am. Bankr. Rep. 204, 151 Fed. 507; In re Wheeler (C. C. A. 7th Circuit) 21 Am. Bankr. Rep. 262, 165 Fed. 188, 91 C. C. A. 222.

I am of the opinion that the referee was justified in his conclusions and findings, and the report is, accordingly, confirmed, and there will be an order denying a discharge.