DEVORKIN v. SECURITY BANK & TRUST CO. OF MEMPHIS, TENN.

(Circuit Court of Appeals. Sixth Circuit.   June 30, 1917.)

No. 2976.

1. BANKRUPTCY ⟨⟩414(1)—PROCEEDINGS FOR DISCHARGE—QUESTIONS OF FACT.

While in some cases a bankrupt's failure to keep any systematic books or records would of itself require the conclusion that this was done with intent to conceal, such conclusion is not generally inevitable, and the inference is one of fact, to be drawn from the proofs in a particular case.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720.]

2. BANKRUPTCY ⟨⟩180—FRAUDULENT TRANSFERS—SECRET TRUST FOR GRANTOR.

The law implies a fraudulent intent from a debtor's conveyance with a secret trust reserved for his benefit.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 252, 253.]

3. BANKRUPTCY ⟨⟩407(3)—DISCHARGE—GROUNDS FOR DENIAL—FRAUDULENT TRANSFERS.

In deciding whether a conveyance by a bankrupt hindered, delayed, and defrauded creditors, so as to defeat a discharge, it is of no controlling importance that the trustee has not been able to avoid it, or even that he has not tried to avoid it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 740, 742–749.]

4. BANKRUPTCY ⟨⟩407(3)—DISCHARGE—GROUNDS FOR DENIAL—FRAUDULENT TRANSFERS.

The transfer by a bankrupt of an absolutely worthless equity of redemption is not a sufficient ground for refusing a discharge, even though the trustee might get something to which he was not entitled as a bonus for a release of the property by him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 740, 742–749.]

5. BANKRUPTCY ⟨⟩414(1)—FRAUDULENT TRANSFERS—BURDEN OF PROOF.

A bankrupt owned a half interest in real estate, the whole of which was worth $10,000 or $12,000. His interest was incumbered by one-half of a mortgage for $5,000, and by a purchase-money lien for $1,000 and a mortgage or deed of trust for $3,000 on his half interest. His attorney, who procured the loan secured by this last mortgage, felt morally responsible for the loan and, fearing that on a foreclosure sale or in the hands of the trustee enough would not be realized to pay this mortgage, took a conveyance of the real estate, and agreed to advance whatever funds were necessary to meet payments on the incumbrances and to give the bankrupt two years within which to redeem. *Held* that, under the circumstances, the trustee had the burden of showing that the creditors whom he represented might have been injured by this conveyance.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720.]

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of Nathan Devorkin, bankrupt. From an order sustaining the objection of the Security Bank & Trust Company of Memphis, Tenn., to the bankrupt's application for discharge, the bankrupt appeals. Reversed and remanded.

Leo Goodman, of Memphis, Tenn., for appellant.

H. R. Boyd, of Memphis, Tenn., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Devorkin was adjudicated a voluntary bankrupt, and directly thereafter filed his petition for a discharge. The Security Bank & Trust Company was a creditor, and supported opposition to the discharge by the specifications (1) that the bankrupt, with attempt to conceal his financial condition, had failed to keep the necessary books of account or records; and (2) that the bankrupt had transferred his interest in certain real estate with intent to hinder, delay, and defraud his creditors. The matter was sent to a referee, who heard proofs and found as facts that, while the bankrupt had wholly failed to keep books, this had not been done with intent to conceal his financial condition, and that the transfer of the real estate was a bona fide transaction, without intent to hinder, delay, or defraud.

The creditor treated the referee's report as that of a special master in equity, and challenged the result through exceptions. Upon the review thus invoked, the District Judge did not pass upon the first specification, but held that the real estate transfer had the inevitable effect to hinder, delay, and defraud, and that, therefore, the second specification should be sustained, and the application for discharge be denied. The bankrupt appeals.

[1] 1. We see no cause to disturb the finding of the referee that the failure to keep books was not with that intent which is made the basis for preventing a discharge. It appears that for three years, and since Devorkin had been the sole proprietor of the business, he had kept no books. The dealings were small and practically for cash; the debts proved were—largely—those left over from an old connection. Doubtless there are cases where the failure to keep any systematic books or records would, of itself, require the conclusion that it was done with the intent to conceal, but such conclusion is by no means inevitable. The inference is one of fact to be drawn from the proofs in a particular case. Sheinberg v. Hoffman (C. C. A. 3) 236 Fed. 343, 149 C. C. A. 475; Sherwood Co. v. Wix (C. C. A. 4) 240 Fed. 692, —— C. C. A. ——. Cases like Paper v. Stern (C. C. A. 8) 198 Fed. 642, 117 C. C. A. 346, and In re Hanna (C. C. A. 2) 168 Fed. 238, 93 C. C. A. 452, are not inconsistent with this rule.

[2] 2. Devorkin owned a half interest in a piece of business real estate, the whole of which had cost $10,000 or $12,000. His interest was incumbered by one-half of an old mortgage for $5,000 covering the entire title, by $1,000 unpaid lien for the purchase price of his half interest, and by a mortgage or deed of trust for $3,000 upon his half interest, given by him more than a year before to secure a cash

loan for money needed on account of old liabilities in which Devorkin was involved. This last loan had been secured for him through the favorable representations of Mr. Goodman, his attorney, and Mr. Goodman felt a measure of moral responsibility upon the loan. Shortly before bankruptcy, and with knowledge on Goodman's part that it was imminent, Devorkin made a deed to Goodman of his half interest, and it is this conveyance which is the basis of the second specification. The testimony is undisputed that this deed was made at Goodman's advice and request, and because the first mortgage was about coming due and some refunding and extensions would be necessary, or else it would be foreclosed, and it was apprehended that not enough would be realized to pay the $3,000 mortgage, and there would be a loss thereon for which Goodman would feel responsible. He also thought that, if Devorkin's title passed to a trustee in bankruptcy, any refunding or extension contracts would be impossible, and thus foreclosure and loss could not be avoided, while, if the title was put in his name, he could arrange the necessary extensions. He therefore agreed that in exchange for the deed, which would enable him thus to protect the existing junior mortgage, he would advance, personally, whatever funds were necessary to meet payments that must be made on the incumbrances, and would give Devorkin two years within which to redeem the property by paying whatever might thus accumulate against it.

It is entirely plain that this transaction, when thus fully stated, did not inherently involve any hindering, delaying, or defrauding of creditors. It was, at most, a conveyance of Devorkin's equity of redemption by way of further security for existing debts; and the mere giving of a preference is no reason for denying a discharge. The trouble is that this trust was not expressed on the face of the deed, which (as we understand the record) appeared to be absolute and unconditional; and this situation suggests, if it does not reveal, a conveyance with a secret trust reserved for the grantor's benefit—a transaction as to which the law implies a fraudulent intent.

[3-5] This leads us to the question which counsel have chiefly argued—whether the equity thus conveyed was worth anything. In deciding whether a conveyance had the effect to hinder, delay, and defraud creditors, it is of no controlling importance that the trustee has not been able to avoid it, or even that he has not tried to avoid it, and, doubtless, in the absence of any proof, there would be some presumption that property conveyed by the bankrupt had value; but it is none the less certain that a deed cannot be intended to or have the effect to hinder, delay, or defraud creditors, unless it is a conveyance of something rather than of nothing, and we cannot regard the transfer of an absolutely worthless equity of redemption as a sufficient ground for refusing a discharge. If such conveyance releases a right of possession pending foreclosure, which would be of substantial value to the trustee, that would make a question on which this record is silent; but the mere fact that the trustee might get something for a release paid to him as a bonus, and not because he was entitled to it, but to avoid trouble—this mere fact we cannot think enough to give condem-

natory character to the transaction. We cannot escape the conclusion that the circumstances of this case—the cost of the property, the admitted incumbrances, the apparent fear of all parties that the property would not pay the incumbrances, and the character of the contract accompanying the transfer—were sufficient to put upon the trustee the burden of showing that the creditors whom he represented might have been substantially damnified. This burden was not met; but we are not inclined, for that reason alone, now to direct that the discharge be granted. The objecting creditor rested on a misapprehension. If the objecting creditor desires, there should be a further hearing on this issue; we decide now only that the making of the deed, under the circumstances shown, does not of itself necessarily bar the discharge. Lacking an application for such further hearing, made within 30 days after mandate, the discharge should be granted.

The order must be reversed, and the case remanded for further proceedings in accordance with this opinion.