## In re FINDER.

## SMITH v. FINDER.
### No. 77.

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1932.

Nathaniel J. Palzer, of New York City (Michael S. Gleason, of New York City, of counsel), for appellant.

Edward Vogel, of Brooklyn, N. Y. (Milton Wexler, of New York City, of counsel), for appellee Herman Finder.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal arises from an order confirming a report of a referee in bankruptcy overruling specifications of objections to the discharge of the bankrupt, Herman Finder.

The first specification charged that the bankrupt had obtained credit by making a false financial statement in writing. This statement made on June 25, 1930, set forth a net worth of $25,280.12. Among the items on which the net worth was based was one of cash in bank stated to be $2,243.13. The actual cash in bank was only $288.11. The item $2,243.13 included both the real cash balance of $288.11 and credits represented by checks aggregating $964.13 which, after being deposited for collection, had been returned as worthless. The item also included a further sum of $964.13 which the bankrupt had added to the cash shown on his books, which embraced both the true cash balance of $288.11 and the worthless checks. The effect of this remarkable method of bookkeeping was not only to include the worthless checks in the item of cash in bank, but to include them twice. In other words, it increased the actual cash by $1,928.26. It cannot be denied that a financial statement showing so little cash in bank as $288.11 would have been a poor basis for obtaining credit. The increased balance was wholly without foundation, and a showing of cash better than the actual balance was so important to the bankrupt that we cannot think his inaccurate statement was inadvertent.

In addition to the incorrect cash item of $2,243.13, there was in the financial statement a valuation of a life insurance policy at $2,000, the real equity in which was but $533.15. The bankrupt says that he acted in good faith in so valuing his policy, and that his valuation was only an estimate made with-

out having the policy before him. The policy was issued in June, 1923, and for only $5,000. It seems unlikely that a business man, who was also an accountant, could have acted in good faith when he estimated the cash value of such a policy at about four times its real worth. It is said that the insurance item was inserted in the statement at the suggestion of the manager of a Trade Association and that the estimate of the value of the policy of the bankrupt must have been honest, because the statement as first made up did not contain the item of $2,000 and showed a net worth of only $23,-280.12, and a net worth of less than $25,000 would not have given an X rating. But even though the bankrupt started out with no expectation of obtaining an X rating, as soon as the inclusion of the policy among the assets was suggested, he attributed to it an excessive value, and this exaggerated value was needed to bring up the net worth shown by the statement which already included two fictitious cash items of $964.13 each, to the $25,000 required for an X rating. In view of the foregoing, we think that it cannot be fairly said that the financial statement was made in good faith and it certainly was false in fact. We accordingly sustain the first specification.

The second specification was withdrawn.

The third specification charged the bankrupt with failing to explain satisfactorily losses of assets. He purchased $37,897.23 of merchandise between December 1, 1930, and January 8, 1931, sold $30,432.49 of merchandise between those dates, and had none on hand when the petition in bankruptcy was filed on January 9, 1931. He testified that a portion of the merchandise was damaged and that some of it was sold at a loss. While his explanation was lacking in details and while he had uniformly sold similar merchandise at a profit during the preceding months, we are not inclined to sustain this specification in view of the findings of the referee who believed the testimony of the bankrupt and was upheld by the District Judge. Sales in the midst of distraction accompanying insolvency are often made at a loss without any dishonesty. Though a more deliberate liquidation would result in a profit, a loss due to poor judgment and panic rather than to any abstraction of assets might readily occur.

On January 7, 1931, the bankrupt transferred $75 to his brother Max Finder to enable the latter to pay for an operation. On the same day he purchased for himself a round-trip ticket to Florida from Thomas Cook & Son at a cost of $107 and drew from his bank $110 in cash besides. He left New York for Florida on January 9, 1931, the day on which the petition in bankruptcy was filed, remained in Florida on a pleasure trip for a week and a half, and then returned to New York. It is evident that he used funds that ought to have remained available for his creditors to finance this pleasure expedition, and that he did this while in contemplation of bankruptcy. Fol. 215.

The fourth specification charged the bankrupt with transferring the $75 above mentioned to his brother without consideration and with intent to hinder, delay, and defraud creditors. The fifth specification charged him with transferring $107 to Thomas Cook & Son, and the sixth with transferring $110 to himself with the same intent. A motion was made before the referee to amend the sixth specification so as to charge a concealment rather than a transfer in fraud of creditors. He declined to grant it for lack of power, but recommended that it be granted by the court.

The act of giving away $75 on the eve of bankruptcy, even to assist a brother, would have been a fraud on creditors. Matter of Richter (C. C. A.) 57 F.(2d) 159; Matter of Julius Bros. (C. C. A.) 217 F. 3, L. R. A. 1915C, 89. But the referee made a finding, confirmed by the District Judge, that the transaction was a loan and not a gift, and the finding, though doubtful, had a reasonable basis. Fol. 210. If it was correct, the transaction was not a transfer with intent to hinder, delay, and defraud creditors. We shall not disturb the order of the District Court dismissing the fourth specification.

Specifications fifth and sixth should have been sustained. The withdrawal of $107 to purchase the round-trip ticket, and of $110 for expenses in connection with the Florida expedition, were transactions on the eve of bankruptcy and plainly in contemplation of it. On that very day the insolvent had drawn a check for $500 to pay his lawyer for services to be rendered in connection with the bankruptcy proceedings, and two days later the petition was filed. It may be that the use of funds to purchase the ticket did not involve a transfer with intent to hinder, delay, and defraud creditors, but the acts of the bankrupt in respect to this ticket surely amounted to a removal of assets with such intent. Section 32 (b) (4) of 11 USCA, section 14b(4) of the Bankruptcy Act employs the words, "Transferred, removed, de-

962

stroyed, or concealed * * * property, with intent to hinder, delay, or defraud his creditors," and makes the doing of any of these things a bar to a discharge. Purchasing a round-trip ticket and using it to effect a passage to Florida was initially a removal and finally a destruction of assets applicable to the bankrupt's estate. The same thing was true of the cash taken and used for expenses in Florida. The withdrawal of this cash prior to its expenditure was also a concealment. The $110 transaction began with a concealment of the funds, was followed by a removal of them, and concluded by their dissipation on the pleasure trip, which amounted to a "destruction."

While there was ample ground for allowance of the motion to amend the sixth specification, we think such a motion was really unnecessary. The bankrupt was sufficiently warned in specifications fifth and sixth of the charges that were finally proved against him. The principal facts (including the allegations of intent to hinder, delay, and defraud creditors) were plainly set forth in these specifications. Whether the purchase and use of a round-trip ticket and the withdrawal of funds for the Florida excursion involved a "transfer, removal, destruction" or "concealment" was largely a question of law. That the objecting creditor characterized the transactions as transfers rather than removals, destructions, or concealments and failed to present in his specifications the proper theory for barring the discharge, was not a fatal variance. The specifications may be deemed amended so far as necessary to conform to the proof.

We hold that the first, fifth, and sixth specifications were established. Accordingly the order granting the application for a discharge is reversed, with directions that an order be entered denying a discharge.