## In re FEYNMAN.

### FEYNMAN v. ROSENTHAL.
#### No. 408.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

Benjamin Barondess, of New York City, for appellant.

Leopold Blumberg, of New York City (Samuel Goldberg, of New York City, on the brief), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Feynman, the bankrupt, was denied his discharge on the ground that he had made a fraudulent transfer to his wife of a policy of life insurance for $1,000. He appeals to this court. The facts are as follows: He took out the policy on December 20, 1913, and it was in force at the time of his voluntary bankruptcy on December 23, 1932. He married in 1916, and both he and his wife swore at the hearing that before marriage he had promised to assign the policy to her; he did in fact take out another policy for $5,000 in her name in February, 1916. Though their testimony even on its face does not make it wholly plain that this promise was a consideration for the marriage, we shall assume arguendo that it was. During the spring of 1932 the policy was lost, and in August the company issued another at Feynman's request; it was made out in his favor as before. The objecting creditor, Rosenthal, who is Feynman's brother-in-law, held his note for $1,200 and began suit upon it on October 31, 1932. The two met on November 13th but could not come to a settlement, and on the 18th Feynman made his wife the beneficiary of the policy and borrowed from the company on the cash surrender value; out of the proceeds he paid the premium due on

December 20, 1932. The record does not show what remained of the surrender value after this loan, but on March 31, 1933, it was only $5.07. However, as there was reasonable ground to believe that the policy was fraudulently transferred, the bankrupt had the burden of showing that the surrender value had disappeared, so far as that is a defence, which we think it was not in these circumstances.

Apparently Feynman never tendered the surrender value to his trustee in accordance with the proviso to section 70a (5), Bankr. Act (11 USCA § 110 (a) (5); in any case the trustee attempted to reclaim the policy by a summary proceeding against him and his wife. The wife protested that her claim was adverse and the referee sustained her position, but in addition found as a fact that the transfer had not been made with intent to defraud creditors. We cannot be sure from his findings made in the proceeding at bar whether the referee now believes that the supposed promise to the wife before marriage was really made, or that the policy was transferred to defraud creditors; and any conclusion becomes doubly difficult in view of the contradictory finding on the summary proceeding. However, he did sustain the specification which charged a fraudulent transfer, and in spite of the nebulous language used, we must suppose, as did the judge, that he meant to find the necessary supporting facts. We have no doubt that the transfer was in fact a fraud, for the story of the prenuptial promise is a plain figment. A bargain between spouses, unrecorded, sixteen years old, neglected upon an occasion which especially called for its performance, finally performed at a time when the husband had a new motive of the strongest kind to get rid of his property; this fabrication we reject; we are satisfied that the transfer was to put the policy beyond Rosenthal's reach, the common device of a hard-pressed debtor. Section 55-a of the New York Insurance Law (Consol. Laws, c. 28) does not touch such a situation; it only concerns policies originally taken out in favor of others, or those honestly assigned. Stoudt v. Guaranty Trust Co., 150 Misc. 675, 271 N. Y. S. 409, affirmed 241 App. Div. 711, 269 N. Y. S. 997.

Unless therefore the whole transaction was too trivial to count at all, the discharge should be denied. When the bankrupt assigned the policy it was an outstanding chose in action with some contingent value, nobody could say just what; it was property, and an offense was then committed which bars a discharge. Section 14b as amended by Act May 27, 1926, § 6 (11 USCA § 32 (b). Even though it had no surrender value, the result is the same, for at that time Feynman could not have reclaimed it under section 70a (5). The value of the property with which men deal in any transaction of course colors their purposes; their intent to defraud their creditors like anything else. An insolvent may give away a trinket innocently enough, supposing that his creditors would not take the trouble to sell it, or that the cost would eat up the price. Thus the value of property is a reasonable enough bit of evidence in reaching a conclusion about fraud. Baker v. Bishop-Babcock-Becker Co., 220 F. 657 (C. C. A. 4); Devorkin v. Security B. & T. Co., 243 F. 171 (C. C. A. 6). But once the fraud be proved, it makes no difference that the creditors are not seriously injured, or that after bankruptcy the bankrupt might reclaim the property for a trifle. In re Breitling, 133 F. 146 (C. C. A. 7); Arenz v. Astoria Savings Bank, 281 F. 530 (C. C. A. 9); Sinclair v. Butt, 284 F. 568 (C. C. A. 8); In re Hirshowitz (D. C.) 194 F. 562; In re Smith (D. C.) 232 F. 248, 254. Courts will not measure the dishonesty of a bankrupt, once that be shown; a discharge is a privilege granted only to such as do not practise on their creditors in any way. The law forbids all efforts to put property beyond the reach of creditors, no matter what its value; so long as courts are tolerant of such conduct, men will engage in it and the purposes of the bankruptcy act will be balked.

The finding of the referee in the summary proceeding to recover the policy was not res judicata. Having once decided that he was without jurisdiction, he had no power to declare that the transfer was not fraudulent. Swift v. McPherson, 232 U. S. 51, 57, 34 S. Ct. 239, 58 L. Ed. 499.

Order affirmed.