## In re GOULD.
### No. 18332.

District Court, D. Connecticut.
Sept. 9, 1939.

Order affirmed Gould v. Niagara Spray-er & Chemical Co., Inc., 110 F.2d 528.

Louis P. Hurley, Jr., of New Haven, Conn., for bankrupt.

Arthur Klein, of New Haven, Conn., for claimant, Niagara Sprayer & Chemical Co.

HINCKS, District Judge.

This matter is before the court upon objections to a discharge in bankruptcy based upon the following transaction.

Within twelve months of petition filed and after letters from a creditor threatening an attachment, the bankrupt transferred his automobile to his father-in-law in satisfaction of a debt due for $600. The bankrupt and his transferee lived in the same house. After the transfer, the bankrupt by consent used the car as before. The transferee, indeed, did not know how to drive.

At the hearing the bankrupt, with candor wholly commendable, testified that when threatened with court action he consulted his attorney as to what should be done and explained to him that under the circumstances the car "was very valuable to me in the pursuit of work which I needed and asked if it would be possible to insure me the use of this car in case of pending proceedings." He stated further that he knew that by placing the car in the name of his father-in-law he was "perhaps putting it out of the reach of your (his) creditors". He agreed that "the best way to protect this car was to transfer it to his father-in-law". And the transferee testified to the existence of an "arrangement" whereby "the car was to be put in his name and he (the bankrupt) was to use the car".

The transaction occurred when the bankrupt was insolvent—indeed was without other assets than the automobile transferred as aforesaid. The debt due his father-in-law, the transferee, was entirely bona fide, and the automobile was listed in the Bankrupt's schedules as having a value of $400 with a notation of its sale to the transferee.

At first blush to be sure, the transfer in a literal sense would seem to be one made with intent to hinder and delay. For creditors thereby were deprived of the summary right of attachment existing under the state law and left to a more circuitous procedure by which alone a voidable preference can be set aside. On reflection, however, it will be apparent that the incidental delay thus created is not in itself sufficient to bring the transfer within the ban of Section 14, sub. c(4), 11 U.S.C.A. § 32, sub. c(4). For every preference necessarily involves the hindrance and delay of creditors in just this sense. Whenever an insolvent uses his cash to pay one creditor in full, other creditors are thereby

deprived of opportunity to attach the cash and are left to more circuitous remedies under the state law and Bankruptcy Act. And it is, of course, well established that a voidable preference does not constitute a transfer under the ban of Section 14. In re Braus, 2 Cir., 248 F. 55; In re Marcus, 2 Cir., 203 F. 29; In re Julius Bros., 2 Cir., 217 F. 3, L.R.A.1915C, 89.

But it is urged that here the transfer was more than a preference in that it was accomplished by an arrangement whereby the insolvent, now the bankrupt, was left with the continued use of the car which was the subject-matter of transfer.

As to this, it must be noted that the evidence failed to disclose the existence of any contract effective as between the bankrupt and his transferee whereby the bankrupt was assured of legal right to the continued use of the car. The evidence was rather that the transferee's claim of $600 against the bankrupt was discharged by the transfer. "The arrangement" whereby the bankrupt continued to use the car appears to have been wholly informal. As between the parties no consideration for the arrangement was stated. It is a fair, indeed, a required inference, that the arrangement was one wholly at the pleasure of the transferee,—terminable at will. This being so the bankrupt's use of the car after the transfer was wholly without right or claim of right, and thus cannot operate to transform a mere preference into a transfer banned by the Act. In re Brown, D.C., 140 F. 383; In re Hedley, D.C., 156 F. 314; In re Huntley, D.C., 14 F.Supp. 784, Huntley v. Snider, 1 Cir., 86 F.2d 539. The bankrupt's hope or expectation with respect to the use of the car must not be confused with an assured contractual right for such use. Cf. Richardson v. Smith, 2 Cir., 102 F.2d 697, at page 699, 125 A.L.R. 774.

However that may be, the conduct of the bankrupt here seems to have been no different from that of an insolvent householder who pays his telephone or his gas bill in full in order that his service may not be cut off; or to an insolvent manufacturer who pays a supply creditor in full in order to prevent the interruption of his source of supply. In re Maher, D.C., 144 F. 503. Certainly no one would contend that such conduct constituted a transfer within the ban of the statute. Likewise as to an insolvent tenant who pays his last month's rent to protect himself

from eviction and thus is left to enjoy the possession of the premises for another month.

It might perhaps be urged that the illustrations just stated must be distinguished from the instant case in that the creditor who received payment in full presumably was without knowledge of the debtor's insolvency. But if this distinction be sound it follows that one bankrupt will be entitled to a discharge because his creditor who had received payment in full was without knowledge of the bankrupt's insolvency, while another bankrupt will be denied his discharge because the creditor knew of his insolvency. I cannot accept as sound any doctrine which thus makes the right to a discharge depend not on the knowledge and conduct of the bankrupt, but instead upon that of a third party, such as a creditor.

And so upon analysis, I come to the conclusion that a transfer will not fall within the ban of Section 14 unless it is intended to deplete the estate. In re Finder, 2 Cir., 61 F.2d 960, certiorari denied, Finder v. Smith, 289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1484. Ordinarily a preference usually depletes only the cash or quick assets of the estate. But at the same time it operates to correspondingly reduce the liabilities of the estate. Thus the effect of a preference on the net estate is nil. That thought I suppose lies at the bottom of the occasional observation that a mere preference does not involve moral turpitude. Rutter v. General Motors, 10 Cir., 70 F.2d 479.

And thus it is that so many of the cases of transfers alleged to be within Section 14 turn upon the bona fides of the creditor's claim against the bankrupt and the value of the bankrupt's property transferred to the creditor in discharge of his claim. Devorkin v. Security Co., 6 Cir., 243 F. 171; In re Feynman, 2 Cir., 77 F.2d 320; Rutter v. General Motors, 10 Cir., 70 F. 2d 479; Hultman v. Tevis, 9 Cir., 82 F.2d 940; In re Adler, 2 Cir., 79 F.2d 840; In re Nicolet, D.C., 10 F.Supp. 541; In re Woods, 2 Cir., 71 F.2d 270, certiorari denied, Woods v. Regain, Inc., 293 U.S. 601, 55 S.Ct. 117, 79 L.Ed. 693. Cf. Davis v. Jacobs, 1 Cir., 35 F.2d 936.

But a transfer coming within the ban of the statute is one which operates to diminish the net estate. Assets are thereby removed from the estate without any corresponding reduction of the liabilities. In

re Finder, supra; In re Singer, 2 Cir., 251 F. 51; In re Kamsler, D.C., 97 F. 194; In re Schenck, D.C., 116 F. 554; Mitchell Co. v. Lawton, 3 Cir., 82 F.2d 689; In re Beckman, D.C., 6 F.Supp. 957.

Thus viewed, it is apparent that the transaction here involved was a preference only and not a prohibited transfer. Here the Referee found that the transferee had a valid and bona fide claim of $600 against the bankrupt and that the transfer was part of a contract whereby that claim was discharged. If I were satisfied that the bankrupt knew that his car had a value substantially in excess of $600, and notwithstanding had attempted to deplete his net estate by the transfer of the car in return for a discharge of a debt of $600, I should not hesitate in holding the transaction to be a fraudulent transfer. But there is no direct evidence of any such value in the car, and we can safely assume that a 1935 Ford, listed in the schedules at $400, was not worth over $600 at the time of transfer in 1937.

One point of procedure deserves comment. The matter comes before me on a report and recommendation by the Referee as Special Master. Under the Chandler Act, the Referee as such under a general reference has power to grant a discharge, and objecting creditors have such rights as the Act provides generally for the review of action by the referee. Cf. Sec. 14, sub. c. This procedure should be followed. But, of course, the use of the superseded procedure on this application cannot affect the result.

It follows that the discharge shall be granted and an order to that effect may be entered.