In re GREEN.

No. 41945.

District Court, E. D. New York.

July 7, 1943.

Solomon Raffe, of Riverhead, L. I., N. Y., for bankrupt.

Harry A. Davidow, of Patchogue, L. I., N. Y., for objecting creditor.

GALSTON, District Judge.

The petition seeks to review an order of the referee overruling specifications of objection to the bankrupt's discharge.

The bankrupt, a physician who had not been in active practice for several years, on November 17, 1941, filed his petition in bankruptcy. Objections to his discharge were urged by Fred Beck, a creditor, who alleged that the bankrupt had executed and delivered a fraudulent chattel mortgage covering his automobile, and that he had failed also to include in his schedules of assets certain real estate located at Sayville, Long Island, which, it is alleged by the creditor, the bankrupt either owned or in which he had an interest.

The findings of fact recited by the referee are to the effect first, that in June, 1941, as security for an existing debt, the bankrupt gave one Leverett Hulse a chattel mortgage for $500 upon a Buick car. This mortgage was duly filed, says the referee, in the town records, and later, when the mortgagee deemed the security unsafe, he took possession of the car.

The difficulty with this finding is that there is no proof beyond the oral statement of the mortgagee that the mortgage was filed in the town records. Indeed, there is no finding concerning the terms of the mortgage; nor was the mortgage produced. The finding fails to disclose when the mortgagee took possession of the car, or indeed that he had made any demand for payment of the principal. On the contrary, the evidence in the case shows that the bankrupt had possession of the car until as late as December 22, 1941, at least a month after the filing of the petition in bankruptcy. Curiously enough too, though the bankrupt refers to the instrument as a mortgage, the mortgagee describes it as a conditional bill of sale. A reading of the bankrupt's testimony leads to the conclusion that he gave no coherent story concerning the transaction. It seems a fair inference that in the light of his equivocation or contradiction the objecting credi-

tor found it difficult to establish the facts in respect to the validity of that alleged chattel mortgage.

The record in respect to the ownership of the property at one time owned by the Sayville Motors, Inc., a company in which the bankrupt was a considerable stockholder, is no more coherent. Again the objecting creditor was thwarted by the evasive testimony of the bankrupt.

That the referee was cognizant of the bankrupt's failure to testify freely and fully concerning these transactions may be gathered from the following passages in the referee's opinion. He states: "True, someone falsified in this vast amount of testimony, it may be that the bankrupt contributed his share,".

The referee fails to disclose what other witnesses he had in mind in writing the foregoing passage. Again the referee states: "The testimony is so conflicting in some instances that it is difficult to determine just who is telling the truth, however, the burden of proof is upon the objecting creditor to establish his case with a fair preponderance of evidence. This he has failed to do with respect to all of the eight specifications. Even assuming, for the argument, that the bankrupt has given false testimony. There is nothing in any of the eight specifications that makes such a charge against the bankrupt, or charges him with making a false statement."

The foregoing passage is not readily understood. How could the objecting creditor have set forth in his specifications that the bankrupt would give false testimony? The false testimony to which the creditor now calls attention could not possibly have been included in the specification of objections because such testimony was not given until the hearings on the specifications of objection to the bankrupt's discharge.

It is true, as the referee says, that a discharge will be denied only upon a ground covered by the specifications of objections, but apparently what the learned referee failed to include in his consideration of the record is that the objecting creditor was thwarted by the bankrupt in the effort of the creditor to adduce the necessary proof. The bankrupt was, throughout his testimony, evasive and contradictory, not only in respect to his activities as a stockholder and officer of Sayville Motors, Inc., but also evasive in answering questions concerning the chattel mortgage given to Hulse. For example, when asked when the mortgage was made payable, he said: "There was no time when I could pay it." The mortgage bore no interest. Hulse demanded payment in August or September, according to Green, and then took possession of the car. However, later it appeared that the bankrupt had the car again, and there was another conversation in October concerning payment, and Hulse repossessed himself of the car. At the hearing of October 19, 1942, he continued testifying vaguely about the loan. Asked when he borrowed the money from Hulse he said:

"March or April, 1940, or '41. I can't remember the year."

"Q. How much did you borrow? A. $300 one time, and another time $200."

"The money was paid in cash."

Asked about the chattel mortgage, he said: "I guess he did. I don't know."

He did not know whether he had signed the chattel mortgage. Later it developed in the examination that the mortgage bore date June 7, 1941, and was filed June 26, 1941 (in what public office it does not appear). He kept the car for a considerable time after the second loan. Green thought that he had given Hulse a bill of sale some time in July or August, 1941, but there was no bill of sale produced. Asked: "Did he (Hulse) take the car the first time before or after the filing of the bankruptcy petition?" he answered: "I don't recall that"; though earlier he said that when he signed the petition he thought Hulse had the car. Later again he did not know where the car was on his visits to Riverhead. Then, though the petition in bankruptcy was filed November 17, 1941, he testified that Hulse took possession of the car on December 22, 1941.

In short, without quoting any further passages from Green's testimony, one must reach the conclusion that he gives no consistent story concerning the possession of the car during the period which followed the delivery of the chattel mortgage. In the light of the equivocation and the contradiction, it was made impossible for the objecting creditor to establish the facts in respect to the validity of that chattel mortgage or the ownership of the car.

The record in respect to the ownership of the property occupied by Sayville Motors, Inc., or of Green's interest therein, is very inconclusive.

632

■ The referee correctly states that the burden is upon the objecting creditor to sustain the specifications of discharge. It is not understood why the objecting creditor failed to produce original documents or call for their production. Indeed it would seem that an examination of Sayville Motors, Inc.'s, books by a qualified accountant would have revealed something concerning the control of the real estate—who paid the taxes, who paid the interest. There should have been an examination made of the chain of title and a determined effort made to locate Kuhn and to take his testimony.

■ Altogether, the record is in such unsatisfactory shape that it would seem unconscionable to grant the bankrupt his discharge in the light of his conduct during the course of these hearings. Since equity should be done, the matter will be sent back to the referee for the purpose of taking further proof along the lines indicated, and any others that are pertinent to the issues. Settle order.