## In re GREEN.

### No. 41945.

District Court, E. D. New York.

Feb. 3, 1944.

Solomon Raffe, of Riverhead, L. I. N. Y., for bankrupt.

Harry A. Davidow, of Patchogue, L. I. N. Y., for objecting creditor.

GALSTON, District Judge.

The supplemental report of the referee of findings of fact and conclusions of law dated November 15, 1943, is, by notice of motion dated January 5, 1944, brought for review before the court. The referee had filed a first report dated January 25th, 1943, overruling specifications of objections filed by a creditor and granting the bankrupt his discharge. That report was reviewed by Judge Inch and in a memorandum decision dated May 4, 1943, the matter was sent back to the referee by him for further findings. A second report of the referee, dated May 12, 1943, supplementing the first report, also granted the bankrupt his discharge. On review of that report the matter was sent back to the referee for the second time because of the unsatisfactory state of the record, and with a direction to the referee to take further proof. 50 F. Supp. 630.

■ One of the main objections to the discharge was that stated in the objecting creditor's 5th specification, reciting that "Said bankrupt unlawfully and fraudulently set forth in his schedule of assets herein that a certain automobile belonging to him was encumbered by a valid chattel mortgage held by one Leverett Hulse, whereas in truth said chattel mortgage is invalid and was made for the purpose of hindering, delaying and defrauding his creditors."

In the referee's first report he found that the bankrupt, a practicing physician, had not been active for several years prior to the filing of his petition in bankruptcy on November 17, 1941, and that "during the month of June, 1941, as security for an existing debt, the bankrupt gave to one Leverett Hulse a chattel mortgage for $500 upon a Buick car. This mortgage was duly filed in the Town Records, later when mortgagee deemed security unsafe, took possession of the car."

In the second report of the referee, and in the report now before the court for review, the finding is repeated. However, the evidence now reveals that the referee was in error in that it was not a chattel mortgage that was given by the bankrupt but a so called conditional sales agreement, bearing date June 7, 1941. In his opinion the referee recites that the terms of the sales agreement are that interest be paid on the sum of $500 from June 7, 1941, and that on the failure of the bankrupt to pay "all or part of the contract price * * * the seller shall be at liberty and is authorized to retake said chattel." This document was filed on June 26, 1941 in the Town Clerk's office of the Town of Islip. The referee finds that Hulse requested payment from Green on several occasions but had obtained nothing. Hulse took the car in July, 1941, and then let the bankrupt use it for weeks at a time. In October, 1941, the bankrupt turned the car over to Hulse, "as per aforesaid copy offered in evidence". I suppose what the referee means is the endorsement of the motor vehicle license. The referee finds that the car was subsequently again lent to Green, but that such loan "did not create a sale, as the ownership remained in Hulse after the transfer in October, 1941."

It must be observed that if Hulse lent $500 to the bankrupt on two occasions in amounts of $300, on some unnamed day in March, 1941, and $200, also on an undesignated day in May, 1941, and later insisted on getting some form of security, for the owner of the car to give a conditional sales agreement to a lender is certainly a curious transaction. The bankrupt explains it on the ground that Hulse drew the bill of sale himself. It certainly could not have been the thought of a lawyer. However, such as it is, it was an instrument filed before the petition in bankruptcy was filed and at a time subsequent to the making of the two loans. Though this agreement was executed apparently on June 7, 1941, it was not filed in the office of the Town Clerk until June 26, 1941.

It is to be noted that in this instrument Green, the bankrupt, is designated as the buyer of the car, and Hulse, who lent the money, is called the seller. The record does not show how or when Hulse became the owner of the car prior to the execution of this conditional sales contract. Indeed from bankrupt's Exhibit 2 of the hearing of August 17, 1943, it appears that he did not execute a statement of transfer of the car until October 31, 1941. That was only seventeen days before he filed his petition in bankruptcy.

The objecting creditor proved by a witness, Pelikan, who was employed in the same garage in Patchogue as was Hulse, that he had seen the Green car in the repair shop since his employment in April, 1943; that Green drove it into the garage for repairs to certain parts inasmuch as the car had been in an accident. The repairs were made in that month, and after they were completed the bankrupt drove the car out. This witness testified that Green subsequently traded the car for another.

Not only then is the matter curious in respect to the form of the alleged security given, but it is made even more suspect by the fact that Green used the car before and after the "conditional sales contract" was executed and filed; also after the alleged transfer to Hulse, and indeed down to the period subsequent to April, 1943. The record supports the objecting creditor's 5th and 7th specifications. This car may not have been of very great value, probably was not; nevertheless it should have been included in the bankrupt's assets at the time that he filed his schedules. See Matter of Feynman, 2 Cir., 77 F.2d 320.

■ Other specifications insisted upon by the objecting creditor are the 4th and 6(a),

which charge that the bankrupt fraudulently omitted from his schedule of assets a certain parcel of real property known as "The Sayville Motors Building". As to these specifications the referee found in his first report that there was "no evidence whatsoever before the court to establish ownership of any real property in the bankrupt." In his second report the referee found that the bankrupt did not omit from his schedules a parcel of property known as "The Sayville Motors Building", and in the final report, the referee says the objecting creditor again failed to prove ownership of the real property in the bankrupt—"All he was able to do was to shout ownership, insist that it was held by a dummy for the bankrupt, but could offer nothing." The referee points out that the chain of title fails to show that at any time the property was in the name of Harry L. Green; that one Fred Kuhn paid the interest on the mortgage in November, 1941, and that in May, 1941, interest was paid by Sayville Motors, Inc., though the referee does find that the bankrupt paid the taxes in cash for Kuhn. The chain of title shows that the Sayville Motors, Inc., acquired the property prior to April 9, 1940 but conveyed it to Kuhn by deed dated April 9, 1940, and that thereafter Kuhn conveyed it to one James McEwan by deed dated July 9, 1941. There were also two mortgages on the property, one held by the Westbury Savings and Loan Association, and the other by the Riverhead Savings Bank. On March 13, 1943 the former mortgagee commenced a foreclosure suit.

The bankrupt early in the proceedings testified that he had never been associated with the Sayville Motors, Inc.; was not a stockholder thereof, and that he was not an officer thereof. But such testimony was not true, for there is in evidence a resolution signed by the bankrupt as secretary of that corporation, dated February 3, 1941; likewise a receipt dated February 3, 1941, given to the objecting creditor by Sayville Motors, Inc., signed not only by John St. Lawrence as president, but also by the bankrupt as secretary. Likewise there is in evidence the signature card of the Patchogue Citizen's Bank & Trust Co., bearing date October 10, 1940, having thereon the signature of Henry L. Green as Vice President. That Green at one time held certificates of stock at least as collateral is shown by the agreement signed by him dated December 16, 1939, on the letterhead of Sayville Motors, Inc., which reads: "The undersigned do agree upon payment of $3285 to turn back stock certificates of Sayville Motors, Inc., said amount to be paid thirty days after above date."

St. Lawrence testified that the bankrupt held fifty shares of the total capital stock issue of one hundred shares of Sayville Motors, Inc. as security, but the certificates in evidence do not indicate such ownership, as the endorsements are in blank.

The referee was, of course, right in concluding that the objecting creditor had failed to prove that the bankrupt had title to the Sayville property, and the specifications of objections say nothing about his shares of stock in the corporation, so the finding of the referee must be sustained in respect to that specific objection. It is significant, though, that the referee in his second report, as I noted in my opinion of July 7, 1943 in this matter, 50 F.Supp. 630, at page 631, stated: "True, someone falsified in this vast amount of testimony, it may be that the bankrupt contributed his share."

Again it must be emphasized that the false testimony to which the referee called attention could not possibly have been included in the specification of objections because such testimony was, of course, not given until the hearings on the specifications of objections to the bankrupt's discharge.

In conclusion, therefore, because of the failure of the bankrupt to list his automobile among his assets in the schedules filed, and the unsatisfactory character of his testimony in the course of these hearings, as more particularly referred to in my opinion of July 7, 1943, the bankrupt is not entitled to, and will be denied his discharge. Accordingly, the supplemental report of the referee cannot be approved. Settle order on notice.