# SWIFT *v.* McPHERSON.

## ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA.

**No. 77.   Argued November 14, 1913.—Decided January 5, 1914.**

While there may be a presumption that a dismissal in equity without qualifying words is a final decision on the merits, that presumption of finality disappears when the record shows that the court did not pass upon the merits but dismissed the bill on any ground not going to the merits.

The scope of a decree dismissing a bill in equity must in all cases be measured not only by the allegations of the bill but by the ground of demurrer or motion on which the dismissal is based. *Vicksburg* v. *Henson*, 231 U. S. 259.

A decree of the Circuit Court of the United States dismissing a bill in equity on motion of the parties and not for want of merit *held*, in this case, not to be a bar to a subsequent suit in the state court on the same cause of action, and the refusal of the state court to treat the decree as conclusive on points left open did not deprive the defendant of any Federal right.

27 So. Dak. 296, affirmed.

McPHERSON, as Assignee of Miller, brought suit against Swift in a Circuit Court of South Dakota, seeking to establish his rights to an undivided one-half interest in certain land then in the possession of Swift. The defendant denied that McPherson had any interest in the property. He further claimed that McPherson had once before brought a similar suit which, after being removed to the Circuit Court of the United States, had been dismissed and that this dismissal finally adjudicated the matters at issue in favor of Swift and against McPherson. The record in the former suit was set out in the answer; and as the pleadings in the two cases both deal with the same matters, it will conduce to brevity to state the facts in narrative form.

Swift, on May 8, 1888, purchased a tract of land in Deadwood, South Dak., paying therefor $18,500 and taking the deed in his own name. Miller, who was a resident of Deadwood, had been active in securing the land and, on May 14, 1888, Swift and he made a contract which recited that Miller "had purchased the land for Swift and for joint account." For his services in collecting the rents and looking after the property, Miller was to receive one-half of the net profits, first deducting 8 per cent. interest on the purchase price of $18,500. "In consideration of Miller's agreement to pay Swift one-half of any ultimate loss that might accrue on said purchase, Swift agreed that Miller should receive one-half of the profits ultimately accruing from the sale of the property over and above the purchase price"—$18,500.

Miller died January 12, 1891, and his Administrator obtained an order for the sale of Miller's interest in the land described in the agreement with Swift. After advertisement, this interest was sold to McPherson for $5,005. Thereupon, on May 18, 1893, McPherson filed in the state court a bill against Swift, which was removed to the United States Circuit Court. In it McPherson set out his purchase of Miller's interest, and alleged that at all times since Miller's death, the land could have been sold for a sum largely in excess of $18,500, but that Swift had neglected to sell or to account for the rents and profits. McPherson, in the bill, tendered Swift $9,250, one-half of the original purchase price and demanded a conveyance and an accounting. Swift's demurrer having been overruled he answered, alleging, among other things, that the original contract had been fraudulently procured by Miller, but claiming that if originally valid, it was a mere contract of employment which had been revoked by the death of Miller, and which, therefore, could not pass to McPherson under the Administrator's sale.

A replication was filed. Several terms passed without

any testimony having been taken and Swift finally notified McPherson that he would accept the tender of $9,250 and recognize him as a partner and joint owner on the terms stated in the bill. McPherson made no reply to this offer and thereupon Swift filed a petition in the cause reciting McPherson's refusal to pay the $9,250 tendered in the bill, renewed his offer to accept the tender, and asked leave to withdraw from his answer those paragraphs which set up an affirmative defense and "to submit to a decree in plaintiff's favor on such terms as might by the court be found equitable and just."

A copy of this petition was served on McPherson, who was required to show cause why it should not be granted.

At the February term (1896) McPherson appeared in person and by his solicitors, filed a response under oath in which he moved the court to dismiss his bill of complaint, stating that his tender had been made at a time when the value of the property was such that it could have been sold at a price to net a profit; that Swift had declined to accept the tender and the property was now much depreciated in value; and that the tender had been withdrawn before the procurement of the order to show cause. McPherson's response concluded by the statement that "the contract does not require this affiant to pay any part of the purchase money for the property, but the same is to be paid at affiant's option out of the proceeds of the sale; and while he was willing to have paid the $9,250 at the time the tender was made, the defendant's refusal for an unreasonable time, and the depreciation of the value was so great that affiant is not willing now to exceed the strict letter of the contract in reference to the mode and manner of reimbursing the defendant for the original purchase price, wherefore he prays the court to discharge the order to show cause and to dismiss the complaint herein as prayed for in this motion."

After argument by counsel, the court made an order re-

citing that "the cause coming on to be heard on the application of Swift for leave to withdraw pars. 13 and 14 of his answer and to submit to a decree in plaintiff's favor on such terms as might be equitable  .  .  .  and the resisting affidavit of the plaintiff who, at the same time, by his solicitors moved to dismiss the bill  .  .  .  and the court having heard the matter upon the affidavit, bill of complaint, verified answer and replication, it is ordered that Swift's application be denied, and it is further adjudged and decreed that this suit and bill of complaint  .  .  .  be and the same is hereby dismissed and that defendant have and recover of the plaintiff, McPherson, the costs of this suit." The defendant excepted, but there is no record of any appeal having been taken by Swift.

In June, 1901, five years later, McPherson brought the present suit in the state court alleging that Swift had collected large sums by way of rent on the land and the sale of lots, which sums were more than sufficient to reimburse Swift for the purchase price of $18,500, interest and expenses, and that upon an accounting, McPherson would be entitled to one-half of these net profits and to an undivided one-half of the lots remaining unsold. McPherson prayed for such relief and for partition.

The defendant answered, attacking the validity of the contract. He also set out the proceedings in the former suit and pleaded that decree of dismissal by the United States Circuit Court as a bar to the present suit.

The trial resulted in Swift's favor, but the decree was reversed by the Supreme Court of the State. 22 S. Dak. 165. On the second trial the court found that there had been no fraud on Miller's part; that the contract was not one of employment but created an interest in the property which was assignable; that McPherson was the owner thereof by virtue of the Administrator's sale; that Swift had received $103,436 from rental and sale of land, and

that after proper deductions there was a net profit of $22,374. A decree was thereupon entered in favor of McPherson for $11,187 and also for an undivided one-half of over 100 city lots remaining unsold. On appeal the decree was affirmed (27 S.. Dak. 296) and the case was then brought here by writ of error.

*Mr. Edwin Van Cise*, with whom *Mr. William H. Beck, Mr. Frank L. Grant* and *Mr. Philip S. Van Cise* were on the brief, for plaintiff in error.

*Mr. Norman T. Mason*, with whom *Mr. Chambers Kellar* and *Mr. James G. Stanley* were on the brief, for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

In the record there are sixty assignments of error involving many rulings of the trial court and the construction of the contract. We can only consider those which present the Federal question that, in failing to sustain the plea of *res judicata*, the court denied plaintiff a right arising under the laws of the United States. The refusal of the state court to treat the decree of the United States court as a bar to the present action is said to have impaired the obligation of that decree as a contract; denied the full faith and credit to which it was entitled and deprived Swift of it as property without due process of law. But all these contentions finally resolve themselves into the single question as to whether the dismissal was on the merits finally adjudicating that McPherson had no enforceable rights under the contract which was the basis of that suit.

Ordinarily, such a question is answered by a mere inspection of the decree—the presumption being that a

dismissal in equity, without qualifying words, is a final decision on the merits. That presumption of finality, however, disappears whenever the record shows that the court did not pass upon the merits but dismissed the bill because of a want of jurisdiction, for want of parties, because the suit was brought prematurely, because the plaintiff had a right to file a subsequent bill on the same subject-matter, or on any other ground not going to the merits. The scope of such decree must in all cases be measured not only by the allegations of the bill, but by the ground of the demurrer or motion on which the dismissal was based. *Hughes* v. *United States*, 4 Wall. 232, 237; *Mayor of Vicksburg* v. *Henson*, 231 U. S. 259.

From an examination of this record it is evident that the dismissal by the United States court was not for want of merit in the bill, because the demurrer had already been overruled. It was not for insufficiency of the testimony, because none had been taken though answer and replication had been filed. It was not a dismissal after a hearing on bill and answer alone, for the defendant was asking to withdraw his affirmative defense and insisting that a decree be entered in favor of McPherson. It was not a dismissal as on a *retraxit*, for the plaintiff not only did not renounce his cause of action, but, in his motion, asserted his rights under a contract which provided for a future adjustment of profits and liabilities, whenever the amount of profits or losses was ultimately determined by the actual sale of the land.

McPherson seems, at first, to have assumed that it was not necessary to wait until the property had been sold, but that by a then present payment of $9,250 he could at once acquire title to an undivided half interest in the lots. His tender of that sum was however declined by Swift who, a year or more later, finally decided to accept the money and asked that a decree be entered in McPherson's favor. McPherson then refused to pay what

he had previously offered, explaining in his response to Swift's motion, that since the rejection of the tender the land had decreased in value and, asserting that he was not then willing to do more than was required by the contract —under which he could wait until the ultimate sale of the property to determine what, if anything, he was bound to pay. He thereupon "moved the court to dismiss the bill as prayed for in this motion." The motion was granted, and Swift excepted.

The record presented an unusual and somewhat ludicrous shifting of positions,—with the defendant insisting that a decree be entered against himself; the complainant resisting a decree in his favor; and the defendant, with no cross-bill filed, excepting to a dismissal. Of course this reversal of position does not change the legal effect of the decree, but it serves to emphasize the fact that it was not a decree against plaintiff on the merits, but one based on McPherson's motion which asserted a contract fixing liability and giving him rights dependent on the ultimate outcome of the investment. The court did not decide what those rights were, nor did it adjudicate that a suit to enforce them could not thereafter be filed. The decree not being on the merits could not be a bar to such subsequent suit in a state or United States court (*Texas Co.* v. *Starnes*, 128 Fed. Rep. 183). The refusal to treat the decree as conclusive of a point which had been left open did not deprive Swift of any Federal right and the judgment of the Supreme Court of South Dakota must be

*Affirmed.*