James J. DOZIER, Appellant,

v.

FORD MOTOR COMPANY.

No. 82–1270.

United States Court of Appeals,
District of Columbia Circuit.

Submitted Oct. 5, 1982.

Decided March 18, 1983.

As Amended March 18, 1983.

Wald, Circuit Judge, dissented and filed opinion.

James J. Dozier, pro se.

Stephen W. Robinson, Fairfax, Va., and Michael F. Marino, Washington, D.C., were on the brief for appellee.

Before MacKINNON, WALD and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

Dissenting opinion filed by Circuit Judge WALD.

SCALIA, Circuit Judge:

On this appeal we must decide the *res judicata* effect of a prior dismissal for lack of subject matter jurisdiction.

The appellant's earlier suit against the present defendant and one of its franchised dealers, brought in the United States District Court for the Eastern District of Virginia and based in part upon the diversity of citizenship provisions of 28 U.S.C. § 1332 (1976),[1] was dismissed for lack of the requisite statutory amount in controversy and for absence of complete diversity of citizenship. *Dozier v. Ford Motor Co.,* No. 80–0958–A (E.D.Va. Dec. 12, 1980) (*"Dozier I"*). As specifically stated in the Fourth Circuit's affirmance, the suit sought "$7,000 compensatory and $1,000,000 in punitive damages for alleged breach of express and implied warranties pertaining to an auto-

mobile manufactured by Ford." *Dozier v. Ford Motor Co.,* 661 F.2d 920, unpublished op. at 2 (4th Cir.1981) (per curiam) (*"Dozier I* Appeal"). Appellant's request for rehearing in the Fourth Circuit alleged that the amount of actual damages was $13,900; nevertheless rehearing was denied. Appellant then filed the present suit in the United States District Court for the District of Columbia, complaining of the same transaction and alleging $16,400 in actual and $1,000,000 in punitive damages. Holding that the doctrine of *res judicata* precluded relitigation of whether appellant's claim placed more than $10,000 in controversy, as required by 28 U.S.C. § 1332 (1976), the district court dismissed the suit. *Dozier v. Ford Motor Co.,* No. 81–2102 (D.D.C. Feb. 23, 1982). We affirm.

█ To give proper *res judicata* effect to the judgment rendered in the Eastern District of Virginia, it is necessary to determine precisely what the judgment decided. In conducting that inquiry, we must assume that the court rendering the judgment acted in accordance with governing law; otherwise, we would in effect be permitting collateral attack. The cardinal rule governing the Eastern District's dismissal for insufficient amount in controversy (and the Fourth Circuit's affirmance) is expressed in the leading case as follows:

> It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal....
> *[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.*

\*     \*     \*     \*     \*     \*

present case.

---

1. Federal question claims were also asserted but rejected. No such claims are made in the

[T]he plaintiff ... knows or should know whether his claim is within the statutory requirement as to amount. *His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit. Indeed, this is the court's duty* ....

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938) (footnotes omitted and emphases added) (cited with approval in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 642 n. 10, 95 S.Ct. 1225, 1230 n. 10, 43 L.Ed.2d 514 (1975)). Thus, the Eastern District of Virginia, affirmed on appeal by the Fourth Circuit, must have decided "to a legal certainty" (from the face of the complaint, given that the case did not proceed to trial) that neither punitive nor actual damages could be recovered in an amount exceeding the statutory threshold in § 1332.[2] *See, e.g., Wiggins v. North American Equitable Life Assurance Co.,* 644 F.2d 1014 (4th Cir.1981); *Givens v. W.T. Grant Co.,* 457 F.2d 612 (2d Cir.), *vacated and remanded on other grounds,* 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972). Because the doctrine of *res judicata* applies to dismissal for lack of jurisdiction as well as for other grounds, that determination bars the present suit in federal district court, at least to the extent appellant seeks to base jurisdiction on § 1332. *American Surety Co. v. Baldwin,* 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932) (Brandeis, J.); *Acree v. Air Line Pilots Ass'n,* 390 F.2d 199 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968).

■ The Eastern District and the Fourth Circuit considered the $1,000,000 punitive damage claim inadequate to satisfy the amount-in-controversy requirement because it was clear that on the facts alleged the governing state law would not allow punitive damages. Appellant's principal attack, however, is upon the actual damage aspect of the matter. He suggests that the prior courts did not make the determination necessary to bar the present suit because they did not inquire into *whether* he *could* in good faith have alleged greater actual damages. But *St. Paul Mercury* requires no such inquiry; it explicitly permits the "legal certainty" determination to be based upon the face of the complaint. *See also Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961) (citing *St. Paul Mercury*) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself ..."). The averment of damages, like the other averments of a complaint, is an allegation of fact. There was no more need to probe beneath that allegation, to determine whether Dozier's actual damages might in good faith be claimed to be higher, than there was to probe beneath the allegations of acts producing the damage, to determine whether they might in good faith be recast to sustain a claim for punitive damages. Simply stated, where jurisdiction is at issue a plaintiff is held to his own representations regarding damages just as regarding everything else; and "[i]f he fails to make the necessary allegations he has no standing." *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).[3] *See LeBlanc v. Spector,*

**2.** It is noteworthy—though not at all necessary to the decision—that the Fourth Circuit specifically cited the *St. Paul Mercury* case. *Dozier I* Appeal at 2–3.

**3.** This approach does not omit the "painstaking examination of the record of the prior action" required by the authorities that the dissent relies upon. *See* Dissent at 1199, citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4420, at 185 (1981). We have not accepted the jurisdiction-

al dismissal without further inquiry, but have scrutinized the district court record to determine the reason—and, as will be seen below, have even scrutinized the record on appeal to determine that the relevant reason was reviewed at that stage. Properly described, what the dissent demands is not merely an examination of the record (to determine that the issue of amount in controversy was decided), but rather the application of what seems to us an unprecedented and undesirable rule that

378 F.Supp. 301, 307 (D.Conn.1973), where, in dismissing a $10,000 claim, the court did not feel constrained to inquire into whether the facts might have justified a claim reaching the $10,001 jurisdictional minimum.

■■■ Appellant portrays his inadequate damage claim in the earlier suit as a mere pleading deficiency which falls within the "curable defect" exception to the *res judicata* effect of jurisdictional dismissals. It does not qualify. The "curable defect" exception applies where a "precondition requisite" to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit—for example, the Government's filing of an affidavit of good cause in a denaturalization proceeding, *Costello v. United States,* 365 U.S. 265, 284–88, 81 S.Ct. 534, 544–46, 5 L.Ed.2d 551 (1961), proper service of process, *Martin v. Dep't of Mental Hygiene,* 588 F.2d 371, 373 n. 3 (2d Cir.1978), or residency adequate to invoke diversity jurisdiction, *see Napper v. Anderson,* 500 F.2d 634, 637 (5th Cir.1974), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46

L.Ed.2d 56 (1975). What all these cases have in common is that the jurisdictional deficiency could be remedied by *occurrences subsequent to the original dismissal.* The deficiency pertained to a fact (filing of affidavit, service of process or present residence) separate and apart from the past and completed transactions that constituted the cause of action. It may be desirable (though not unquestionably so) to give a plaintiff multiple chances to comply with these post-transactional requirements;[4] but it is quite another matter to permit him to change his sworn recitation of past facts.[5] Some very old cases suggest that any "defect in pleading" may be remedied. For example in *Smith v. McNeal,* 109 U.S. 426, 431, 3 S.Ct. 319, 321, 27 L.Ed. 986 (1883), the Supreme Court held that dismissal for failure to allege the jurisdictional prerequisite of disputed title was no bar to a subsequent suit which remedied that "defect in pleading." We regard such cases as superseded, expressing a rule that made sense only in a system where liberal amendment of plead-

amount in controversy *cannot* be decided on the face of the complaint if the decision is to have *res judicata* effect.

4. Even then, proper application of *res judicata* should require some demonstration that the plaintiff is relying upon a new fact or occurrence, and not merely relying upon those that existed at the time of the first dismissal. Apparently, however, not all courts would insist upon this. *See, e.g., Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 488 F.2d 75 (5th Cir.1973) (suit previously dismissed for failure to allege diversity permitted to be refiled without inquiry into change of resident status).

5. Generally speaking, the law regards the injury inflicted by a wrongful act as a past fact, complete at the time suit lies, even though latent effects of that injury manifest themselves only in the future.

Typically, even when the injury caused by an actionable wrong extends into the future and will be felt beyond the date of judgment, the damages awarded by the judgment are nevertheless supposed to embody the money equivalent of the entire injury. Accordingly, if a plaintiff who has recovered a judgment against a defendant in a certain amount becomes dissatisfied with his recovery and commences a second action to obtain increased damages, the court will hold him precluded; his claim has been merged in the

judgment and may not be split.... It is immaterial that in trying the first action he was not in possession of enough information about the damages, past or prospective, or that the damages turned out in fact to be unexpectedly large and in excess of the judgment.

\*    \*    \*    \*    \*    \*

A brings an action against B for conversion of a derrick, and obtains judgment for the value of the derrick. Thereafter he brings a new action to recover the loss of profits from a valuable contract which he was unable to perform because of the conversion of the derrick. The prior judgment merges the claim and precludes the action.

*Restatement (Second) of Judgments* § 25 comment c, at 211–12 (1982). A different rule could conceivably be adopted with regard to jurisdictional dismissals, so that newly discovered injury *would* suffice to overcome that bar. Such a rule would logically have to be applied, however, even when the original court *has* conducted the sort of *sua sponte* mini-trial regarding actual damages that the dissent considers needful to preclude later suit. Its effect, therefore, would be a frequent and unavoidable impairment of the finality of jurisdictional dismissals. We know of no case suggesting such a distinction.

ing was not permitted.[6] (*Smith v. McNeal* has not been cited by the Supreme Court in the century since its issuance.)[7]

The appropriateness of dismissing this suit is confirmed by the fact that even if appellant's revision of his damage claim had been attempted through amendment of the pleadings before judgment in the original suit, it should probably not have been allowed. As was said in another case dismissing a claim because the damage alleged fell short of the jurisdictional amount:

Plaintiff is, of course, entitled to leave to amend his complaint. But when an initial prayer proves defective at conferring jurisdiction, and the complaint is amended so as to raise the prayer above the jurisdictional amount, the plaintiff may find that he has provided the court with the objective evidence of a colorable claim necessary to dismiss an action seeking highly speculative damages despite the jurisdictionally liberal presumption in favor of the plaintiff's good faith. Absent some showing of "[a] change of circumstances or developing injuries to ex-

plain the inflation of the claim which alone [gives] color of federal jurisdiction," ... amendment of a claim after a finding of jurisdictional inadequacy provides "independent evidence ... tending to show that the claim [has] been inflated solely to exceed the jurisdictional threshold."

*LeBlanc v. Spector, supra,* 378 F.Supp. at 307–08 (citations omitted). *See also Fritz v. Warner-Lambert Pharmaceutical Co.,* 349 F.Supp. 1250 (E.D.N.Y.1972); *Brown v. Bodak,* 188 F.Supp. 532 (S.D.N.Y.1960). Plaintiff evidently declined to expose himself to that risk before the original district court. If the doctrine of *res judicata* is to achieve its intended purposes he must be barred here.[8]

Two factors peculiar to the present case might alter the effect of the judgment based upon the inadequate pleading. First, it might be argued that because the earlier courts found, in addition to insufficient jurisdictional amount, lack of diversity between the parties, the former is an alternative holding and, as such, is not entitled to *res judicata* effect. The cases and commen-

---

**6.** *Cf.* 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.409[1], at 1006 (2d ed. 1982) ("In modern procedural systems where leave to amend is freely granted ... the rule [that dismissal for failure to state a cause of action should not bar a subsequent complaint that supplies the necessary additional facts] is both unneeded and unsound.")

While rejecting our basis for separating "curable" from "noncurable" defects, the dissent proposes none of its own. We are left to wonder, therefore, why the dissent expresses such confidence that "clear[ly], there is nothing to be cured in Dozier's allegation of punitive damages." Dissent at 6. The addition of a newly pleaded fact might convert the warranty action into an action for fraud or deceit, for which punitive damages *would* be allowed. Our analysis, of course, would not permit this.

**7.** The dissent asserts that our holding on the "curable defect" point contradicts the Fifth Circuit's decision in *Mann,* discussed at note 4, *supra.* We think not. *Mann* involved a defect that *was* curable according to our rule. We differ with that court concerning an issue not presented here—namely, whether in addition to being *curable,* the defect must be *shown to have been cured* by a new occurrence, rather than through a revision of pleadings with no post-dismissal change in the underlying facts. We agree with the dissent that our approach

(requiring the showing) makes more sense— but that represents our estimation of the appropriate trade-off between the prevention of harassing litigation and ease of judicial application. We do not agree that an approach dispensing with the showing would be irrational— and that *Mann* must therefore be presumed to be applying an entirely different test.

**8.** Even absent considerations of *res judicata,* it is questionable whether plaintiff would be able to survive a motion to dismiss in the district court here on the ground that his damage claim has been inflated for the sole purpose of conferring federal jurisdiction. *See Arnold v. Troccoli,* 344 F.2d 842 (2d Cir.1965), in which a state-court action seeking $6,000 in damages was discontinued and refiled in federal court with a $15,000 *ad damnum.* In affirming a dismissal "grounded on the solid fact that suit had originally been brought for only $6,000 and there was no showing of change of circumstances or developing injuries to explain the inflation of the claim," 344 F.2d at 846, the Second Circuit said that "[t]he purpose of Congress in excluding from federal courts claims which do not exceed $10,000 will be largely thwarted if the district courts fail to act as the district court did here." 344 F.2d at 845.

tators are divided on this issue [9]—and understandably so, since a real dilemma is presented. A rule declining to accord *res judicata* effect to an alternate ground must of course apply to both grounds, which would mean that a case which is doubly inadequate can be refiled whereas a case inadequate in only one respect cannot. On the other hand, a rule which gives *res judicata* effect to both grounds leaves the losing party who concedes the adequacy of one no appellate remedy for the patent invalidity of the other except a frivolous appeal. We need not reach that more general question in the present case,[10] since here the losing party did pursue an appeal, which was explicitly rejected *on both grounds. Dozier I* Appeal at 2. We hold that in such circumstances the dismissal on each ground is *res judicata* in a subsequent suit.

■ The second factor peculiar to the present case is that the Fourth Circuit judgment was expressly entered "without prejudice." The usual meaning of this phrase, however, is "without prejudice as to the substantive cause of action ... [but] with prejudice on the issue ... 'which was litigated in the prior action.'" *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 267 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973) (quoting *Restatement of Judgments* § 49, comment b, at 195 (1942)). The issue litigated here, as we have discussed, was whether the present claim exceeded the jurisdictional minimum. Dismissal "without prejudice" was appropriate, of course, to make it clear that appellant was not to be precluded by

the doctrine of *res judicata* from having his claim heard on the merits in state court. In the days when pleadings were not liberally amendable, it might have made sense to interpret the phrase "without prejudice" to mean that the court was only determining the adequacy of the particular pleadings, and not the adequacy of the facts (whether pertaining to jurisdiction or the merits) to which the pleadings were directed. But such an interpretation today is fanciful, since it assumes, in the context of this case, that the Eastern District of Virginia and the Fourth Circuit went through the trouble they did to make the plaintiff refile instead of amending his complaint. *See* note 6, *supra.*

■ We may comment upon the fact that appellant has been a *pro se* litigant in all these proceedings—both in the District Court and Court of Appeals in the Fourth Circuit, and before the District Court and Court of Appeals here. At least where a litigant is seeking a monetary award, we do not believe *pro se* status necessarily justifies special consideration. *See, e.g., Mazique v. Mazique,* 356 F.2d 801 (D.C.Cir.) (per curiam), *cert. denied,* 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966). While such a *pro se* litigant must of course be given fair and equal treatment, he cannot generally be permitted to shift the burden of litigating his case to the courts, nor to avoid the risks of failure that attend his decision to forgo expert assistance. The present appellant is, in any event, a particularly poor candidate for special treatment. Though not a member of this bar, he

---

9. *Compare* 1B J. Moore & T. Currier, *supra* note 4, ¶ 0.443[5], at 3921; *In Re Westgate-California Corp.,* 642 F.2d 1174, 1176–77 (9th Cir. 1981); *Winters v. Lavine,* 574 F.2d 46, 67 (2d Cir.1978), *with* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4421 (1981); *Restatement (Second) of Judgments* § 27 comments i, o (1982); *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1168–70 (5th Cir.1981); *American Tel. & Tel. Co. v. FCC,* 602 F.2d 401, 410 n. 48 (D.C.Cir.1979); *Halpern v. Schwartz,* 426 F.2d 102 (2d Cir.1970).

10. Nor did we in *Stebbins v. Keystone Insurance Co.,* 481 F.2d 501 (D.C.Cir.1973), though that case is sometimes cited as supporting the

position that an alternate holding has no *res judicata* effect, *see American Tel. & Tel. Co., supra* note 9. *Stebbins* held that where one of the alternative grounds involves *a curable defect that is later cured* collateral estoppel does not bar relitigation of issues supporting either ground. This might be regarded as merely an exception from the general rule of binding effect for alternate holdings—an exception that is reasonable because, as the court explained, the ease of remedying the curable defect makes it more likely that the refusal to take an appeal in the first case was not an acknowledgment of the validity of both grounds. *See* 481 F.2d at 508.

claimed under oath and in response to question from the Eastern District judge that he is a member of the bar of the State of Maryland, and has practiced law for some 31 years, representations upon which the court relied. Transcript of Proceedings, *Dozier I* at 6; *see also,* Answer to Defendant Ford's Motion to Dismiss, *id.* at 3. Moreover, appellant was fully aware both that jurisdiction would lie under § 1332 only if the amount in controversy exceeded $10,000, and that if the court found punitive damages unavailable, his suit was subject to dismissal because his claim for actual damages was below the threshold amount. *See* Answer to Defendant Ford's Motion to Dismiss, *Dozier I* at 1; Brief for Appellant, *Dozier I* Appeal, at 3 (offer to amend complaint to allege more than $10,000 actual damages).

The dissent believes that our approach does not display sufficient solicitude for "incompetent litigants." Dissent at 1199. We think that concern is misplaced when the jurisdictional question turns upon an issue no more sophisticated and a fact no more likely to be misstated to the plaintiff's detriment than the amount of damages. Even when the noncurable defect is more arcane, however, solicitude for the possibly incompetent must be balanced against solicitude for the possibly harassed. Where allegations of pleadings concerning past facts are concerned, the system has struck the proper equipoise, we think, by extending itself to assist the incompetent *at the first trial* (through pleading rules that are nontechnical and permit easy amendment), and by saying "enough" at the second. The dissent apparently acknowledges the need to say "enough" at some point (see the last footnote to the opinion) but provides no principled basis for determining when. We prefer a rule of law, and have applied what we believe to be the established and fair one.

The scope of the disagreement between our opinion and the dissent should not be exaggerated. We are in accord that the doctrine of *res judicata* has application "to questions of jurisdiction as well as to other issues," *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932) (Brandeis, J.); that it ordinarily precludes subsequent challenge to a finding that jurisdiction *does* exist, see, e.g., *Durfee v. Duke,* 375 U.S. 106, 116, 84 S.Ct. 242, 247, 11 L.Ed.2d 186 (1963); and that it precludes subsequent challenge to a finding of *non*jurisdiction—even on an alternate ground (so long as that ground has been considered on appeal)—unless the doctrine of "curable pleading defects" applies. It is on the operation of the latter doctrine that we part ways.

The defendant in this case has already undergone the expense of litigation in two district courts and two courts of appeals. We decline to prolong the contest in the federal courts by allowing the plaintiff simply to change his mind as to the damages he has suffered.

*Affirmed.*

WALD, Circuit Judge, dissenting:

Appellant James Dozier sued appellee Ford Motor Company ("Ford") and a Virginia Ford Dealer in the Eastern District of Virginia, alleging breach of warranty and seeking $7,000 actual damages and $1,000,-000 punitive damages. The Virginia district court dismissed the action without prejudice for lack of subject-matter jurisdiction, finding that punitive damages were not recoverable for breach of warranty and that Dozier had not met the $10,000 amount in controversy requirement for diversity jurisdiction. Dozier appealed and the Fourth Circuit affirmed.

Dozier then refiled in the district court for the District of Columbia, alleging $16,-400 actual damages and $1,000,000 punitive damages. The district court dismissed for lack of diversity jurisdiction, finding that the doctrine of res judicata barred relitigation of whether Dozier could satisfy the $10,000 jurisdictional requirement. In my view, the availability of punitive damages cannot be relitigated, but Dozier should be given a second chance to show $10,000 in actual damages. I would therefore affirm in part, reverse in part, and remand to the

district court to determine the amount in controversy.

## I. FACTUAL BACKGROUND

Dozier's complaint alleges that he purchased a used Mercury Bobcat from Brown Lincoln-Mercury of Arlington, Virginia, in February 1980. Dozier also purchased a one-year service contract from Ford. The car repeatedly broke down, and neither the dealer nor Ford would honor the service contract. Dozier, at that time a resident of Virginia, brought suit pro se in the Eastern District of Virginia against the dealer and Ford, alleging breach of warranty and claiming $7,000 in actual damages and $1,000,000 in punitive damages. He did not itemize or explain his claim for actual damages.[1] Jurisdiction was based on diversity.

The Virginia district court found no complete diversity since both Dozier and the car dealer were Virginia citizens. In addition, the court ruled that under Virginia law, punitive damages could not be recovered for breach of warranty; therefore, Dozier had also failed to meet the $10,000 amount in controversy requirement for diversity jurisdiction.[2] The court did not inquire into whether Dozier could in good faith allege more than $10,000 actual damages. The court dismissed the case for lack of subject-matter jurisdiction, without prejudice.

Dozier appealed to the Fourth Circuit, which affirmed the Virginia district court on all grounds. Dozier then filed a petition for rehearing in which for the first time he itemized his damages and claimed more than $10,000 actual damages.[3] The petition

was denied. Dozier, by now a resident of Maryland, filed a new complaint in the District of Columbia district court, naming Ford as the only defendant. He claimed $16,400 in itemized actual damages and $1,000,000 in punitive damages, and again asserted diversity jurisdiction. The district court dismissed the action for lack of jurisdiction, relying on the doctrine of res judicata, and Dozier appealed to this court.

## II. ANALYSIS

### A. The "Curable Defect" Standard

A finding that jurisdiction *exists* is generally res judicata between the parties to the lawsuit. *See, e.g., Durfee v. Duke,* 375 U.S. 106, 116, 84 S.Ct. 242, 247, 11 L.Ed.2d 186 (1963) ("[W]hen ... the jurisdictional issues had been fully and fairly litigated ... in the Nebraska courts, the federal court in Missouri was correct in ruling that further inquiry was precluded."); *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932) (Brandeis, J.) ("The principles of *res judicata* apply to questions of jurisdiction as well as to other issues.").[4]

The preclusive effect of a finding that jurisdiction does not exist is less settled. In some cases, a plaintiff can successfully reassert a basis for jurisdiction that was previously rejected. For example, if a claim of diversity jurisdiction fails for lack of complete diversity, and a later move by one of the parties establishes complete diversity, diversity jurisdiction will lie.[5] Similarly, lack of personal jurisdiction (because of defective service of process or otherwise) can

---

**1.** Complaint ¶ 8, *Dozier v. Ford Motor Co.,* No. 80–0958–A (E.D.Va. Dec. 12, 1980) (*Dozier I*), *aff'd mem.,* 661 F.2d 920 (4th Cir.1981) (*Dozier I Appeal*).

**2.** Transcript of Proceedings, Dec. 12, 1980, at 9, *Dozier I.*

**3.** Dozier had earlier stated that "the claim of $7,000.00 actual damages can be amended to show in excess of $10,000.00." Answer to Defendant Ford's Motion to Dismiss ¶ 3(a). He declined to amend his complaint, however, believing that the complaint already gave "other grounds for Federal jurisdiction." *Id.*

**4.** *See also Restatement (Second) of Judgments* § 12 (1982) (noting the exceptions to this general rule); 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.405[5], at 658 (2d ed. 1982).

**5.** *See, e.g., Napper v. Anderson, Henley, Shields, Bradford & Pritchard,* 500 F.2d 634, 637 (5th Cir.1974); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3608, at 662 (1975); *cf. id.* § 3605, at 618 (court can create complete diversity by dismissing nondiverse parties who are not indispensable).

be cured and the suit recommenced.[6] More generally, "a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim" can be cured and the case refiled. *Costello v. United States,* 365 U.S. 265, 285, 81 S.Ct. 534, 545, 5 L.Ed.2d 551 (1961) (by implication).[7]

On the other hand, numerous cases hold that where a question of jurisdiction has been fully litigated and the claim dismissed for lack of jurisdiction, the issue of jurisdiction cannot be relitigated. *See, e.g., Zoriano Sanchez v. Caribbean Carriers, Ltd.,* 552 F.2d 70, 72 (2d Cir.) (no subject matter jurisdiction under the Jones Act over foreign shipowner), *cert. denied,* 434 U.S. 853, 98 S.Ct. 168, 54 L.Ed.2d 123 (1977); *Hoston v. Silbert,* 514 F.Supp. 1239, 1242 (D.D.C. 1981) (statute of limitations); *Miller v. Saxbe,* 396 F.Supp. 1260, 1261 (D.D.C.1975) (failure to meet the time limit for filing race discrimination complaint).[8]

Most of the decided cases, whether they find or reject res judicata, are broadly phrased. They suggest that the same jurisdictional ground either can always or can never be relied on in a second action. *Compare, e.g., Johnson v. Boyd-Richardson Co.,* 650 F.2d 147, 148 (8th Cir.1981) (in an earlier action, plaintiff misnamed the corporate defendant; "the *res judicata* bar does not arise") *and Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 488 F.2d 75,

76 (5th Cir.1973) (per curiam) (original action was dismissed "basically because requisite jurisdictional allegations [of diversity] were missing . . .; that dismissal does not operate as an adjudication upon the merits") *with, e.g., McCarney v. Ford Motor Co.,* 657 F.2d 230, 234 (8th Cir.1981) (if plaintiffs "had refiled their suit under the [same] Act it would have clearly been precluded by their earlier suit") *and Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980) (per curiam) ("a second complaint cannot command a second consideration of the same jurisdictional claims").

The Tenth Circuit, however, has reconciled *Costello* and other cases permitting relitigation with cases barring relitigation by distinguishing between "curable" and "noncurable" defects:

"Principles of res judicata apply to jurisdiction as well as to other issues. *American Surety Co. v. Baldwin,* 287 U.S. 156, 166 [53 S.Ct. 98, 101, 77 L.Ed. 231] (1932). In some cases, however, dismissal for want of jurisdiction is no bar to another suit. See *Costello v. United States,* 365 U.S. 265, 286 [81 S.Ct. 534, 545, 5 L.Ed.2d 551] (1961). Thus, suit may be brought again where a jurisdictional defect has been cured or loses its controlling force. See *Luker v. Nelson,* 341 F.Supp. 111, 115 (N.D.Ill.1972). Here we are not dealing with such a curable defect and the . . . bar of res judicata applies."

6. *See, e.g., Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 373 n. 3 (2d Cir.1978) (per curiam); *Etten v. Lovell Mfg. Co.,* 225 F.2d 844, 846 (3d Cir.1955), *cert. denied,* 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956); 18 C. Wright, A. Miller & E. Cooper, *supra* note 5, § 4436, at 344–45 (1981); 1B J. Moore & T. Currier, *supra* note 4, ¶ 0.405[5], at 661–62.

7. In *Costello,* an earlier government effort to denaturalize petitioner Costello had failed because the government did not file an affidavit of good cause. In upholding a subsequent denaturalization, the Court held that filing the affidavit was a "precondition requisite" to reaching the merits and that failure to meet such a precondition was a jurisdictional defect within the meaning of Rule 41(b). 365 U.S. at 285–88, 81 S.Ct. at 544–46. Therefore, under Rule 41(b), the faulty first effort did not determine the merits. The Court assumed without

discussion that the dismissal for failure to file the affidavit of good cause was not res judicata on whether good cause could be established.

*See also Sierra Club v. Morton,* 405 U.S. 727, 736 n. 8, 92 S.Ct. 1361, 1366 n. 8, 31 L.Ed.2d 636 (1972) (Sierra Club lacks standing to challenge resort development; decision "does not, of course, bar the Sierra Club from seeking . . . to amend its complaint" to properly allege standing).

8. *See also* 18 C. Wright, A. Miller & E. Cooper, *supra* note 5, § 4436, at 340 ("dismissal for lack of jurisdiction . . . preclude[s] relitigation of the issues determined in ruling on the jurisdiction question"); 1B J. Moore & T. Currier, *supra* note 4, ¶ 0.405[5], at 660; *cf. Angel v. Bullington,* 330 U.S. 183, 190, 67 S.Ct. 657, 661, 91 L.Ed. 832 (1947) (state court finding of no jurisdiction is decision on merits for purposes of subsequent federal diversity action).

*Stewart Securities Corp. v. Guaranty Trust Co.,* 597 F.2d 240, 242–43 (10th Cir.1979) (some citations omitted) (quoting *Eaton v. Weaver Manufacturing Co.,* 582 F.2d 1250, 1255–56 (10th Cir.1978)); *accord Luker v. Nelson,* 341 F.Supp. 111, 114–15 (N.D.Ill. 1972).

I would adopt the Tenth Circuit's approach, which I would restate as follows: Principles of res judicata apply to dismissals for lack of jurisdiction as well as to other issues. However, where a jurisdictional defect is cured or otherwise loses its controlling force, a second action may be brought under the same jurisdictional provision.[9] This rule strikes a reasonable balance between considerations of finality and doing justice to inept litigants. When the defect can be cured, the plaintiff will have a chance to cure it. On the other hand, where the jurisdictional flaw cannot be cured, the plaintiff cannot return to court in the hope that a second judge will find jurisdiction where the first did not. The costs in duplicative litigation will be minor since the defendant need not "incur the inconvenience of preparing to meet the merits." *Costello,* 365 U.S. at 286, 81 S.Ct. at 545.

Dozier's earlier failure to establish complete diversity has clearly lost its controlling force and is not res judicata. Indeed, Ford does not dispute that Dozier has established complete diversity. Equally clearly, there is nothing to be cured in Dozier's allegation of punitive damages. It is a purely legal question whether they are available for breach of warranty under Virginia law. Moreover, Dozier has had a full and fair opportunity to litigate their availability. The matter was decided both by the Virginia district court and by the Fourth Circuit. Therefore, res judicata precludes either awarding punitive damages or including them as part of the $10,000 jurisdictional amount.

### B. Res Judicata for an Alternative Holding

The Virginia district court's finding that punitive damages are unavailable is an alternative holding, and there is some disagreement over when an alternative holding should be given res judicata or collateral estoppel effect. *See Stebbins v. Keystone Insurance Co.,* 481 F.2d 501, 507–08 (D.C. Cir.1973) (expressly not reaching the issue and holding narrowly that where an employment discrimination suit had been dismissed for failure to apply for the job and lack of qualifications, the ruling on qualifications did not create collateral estoppel).[10] Here, the district court's ruling on punitive damages was affirmed on appeal, and I concur in the majority holding that this is sufficient indication of careful decisionmaking so that res judicata should apply.

### C. Actual Damages

Thus far, the majority and I are in basic agreement. *See* maj. op. at 1195. We differ, however, on how to interpret the Virginia district court's finding that there was not $10,000 actual damages in contro-

---

9. Of course, even for a noncurable jurisdictional defect, the usual requirements for res judicata must be satisfied. *See* 18 C. Wright, A. Miller & E. Cooper, *supra* note 5, § 4416 (general requirements for issue preclusion).

10. *Compare Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1168–70 (5th Cir.1981) (unappealed alternative ground is not conclusive, at least for purposes of offensive collateral estoppel); *American Tel. & Tel. Co. v. FCC,* 602 F.2d 401, 410 n. 48 (9th Cir.1979) (dictum) (alternative ground for FCC rate order will not create collateral estoppel); *Halpern v. Schwartz,* 426 F.2d 102 (2d Cir.1970) (earlier decision is not conclusive on either issue, at least for bankruptcy cases); *Restatement (Second) of Judgments* § 27 comments i; o (1982) (judgment not conclusive on either issue unless affirmed on that issue on appeal); *and* 18 C. Wright, A. Miller & E. Cooper, *supra* note 5, § 4421, at 208 (preclusion should arise only if "a particular finding reflects a careful process of decision. Appellate review would automatically satisfy this standard.") *with In re Westgate-Calif. Corp.,* 642 F.2d 1174, 1176–77 (9th Cir.1981) (earlier decision is conclusive on both issues; court does not rely on fact that earlier decision was affirmed on appeal; *Ezagui v. Dow Chem. Corp.,* 598 F.2d 727, 733 (2d Cir.1979) (same); *and* 1B J. Moore & T. Currier, *supra* note 4, ¶ 0.443[5], at 3921 & n. 10 (judgment has preclusive effect on both issues unless appellate court considers only one issue on appeal).

versy. On the facts of this case, I believe that the court's finding reflects merely a curable defect in pleading and not a factual determination that Dozier could not show $10,000 in actual damages. The court made no inquiry into Dozier's actual damages. (It was not required to, and had little reason to exercise its discretion to do so since it would have dismissed the case in any event for lack of complete diversity.) Instead, it simply took the allegation in Dozier's complaint of $7,000 actual damages at face value.[11] Moreover, the Virginia court explicitly dismissed the case "without prejudice," which indicates to me that the court contemplated that Dozier could refile an amended complaint in federal court.

I find the majority's analysis flawed in four aspects. First, the majority refuses to go behind the face of the Virginia district court's negative ruling on amount in controversy to determine whether the court looked only at the complaint or made a factual inquiry into Dozier's actual damages. Fair application of the doctrine of res judicata, however, requires a court to inquire closely into the record. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction,* § 4420, at 185 (1981) ("[T]he first step in resolving uncertainty as to the ... issues actually decided lies in painstaking examination of the record of the prior action.") (footnote omitted). In my view, the majority's failure to inquire more closely in this case is inconsistent with the general philosophy, embodied in our liberal pleading rules, of giving even incompetent litigants an opportunity to have their claim heard on the merits.

More troubling is the majority's view that a new suit should be permitted only when the original jurisdictional defect "could be remedied by *occurrences subsequent to the original dismissal.*" Maj. op. at 1192 (emphasis in original). The majority views the total failure to file an affidavit of good cause in *Costello* as such a defect, but does not view the amount in controversy defect at issue here as such. I

do not see the policy reasons for distinguishing between *Costello* and *Dozier* on this basis. In both *Dozier* and *Costello,* the complainant could have done it right the first time around and did not. In *Costello,* the government did not file an affidavit of good cause *at all,* while in *Dozier* the plaintiff filed a manifestly defective complaint. The policy rationale for not permitting a second suit (avoiding nuisance to the defendant) applies in both cases with equal force. Either can be defended by simply asserting the defect, with no need to prepare a defense on the merits. The policy rationale for permitting a second suit (giving an incompetent complainant a full chance to have his day in court) also applies to both cases equally. There seems no reason why a total bumbler should be permitted to refile while a partial bumbler should not.

The logical upshot of the majority's approach would be that the government could not refile in *Costello* either. We are constrained, however, to follow *Costello,* and I see no reason not to apply here its balancing of the competing policies.

Third, the Virginia district court explicitly dismissed the case "without prejudice." The majority contends that this merely indicates the court's desire "to make it clear that appellant ... [could still have] his claim heard on the merits in state court." Maj. op. at 1194. However, this explanation makes little sense. No federal court has any power to bar a claimant, like Dozier, from pursuing his claim in state court. Even if the court had dismissed "with prejudice," the dismissal for lack of jurisdiction under Fed.R.Civ.P. 41(b), "[would] not operate as an adjudication on the merits." 18 C. Wright, A. Miller & E. Cooper, *supra,* § 4435, at 333; *see Costello v. United States,* 365 U.S. 265, 286, 81 S.Ct. 534, 545, 5 L.Ed.2d 551 (1961) ("We do not discern in Rule 41(b) a purpose to change this common-law principle ...."). Thus, the court's dismissal "without prejudice" could only mean that it contemplated that Dozier could refile an amended complaint in feder-

---

11. *See* Transcript of Proceedings, *supra* note 2.

al court. *Accord Cloverleaf Standardbred Owners Association v. National Bank of Washington,* 699 F.2d 1274, 1275 n. 2, (D.C.Cir.1983) ("The dismissal [for lack of an indispensable party] was ordered 'with prejudice.' The 'prejudice' ... relates to the filing of another action between the same parties on the same claim *in federal court.*") (emphasis in original); *International Philanthropic Hospital Foundation v. United States,* 621 F.2d 402, 405, 223 Ct.Cl. 587 (Ct.Cl.1980) (similar).[12]

Finally, I note that there is case support for my approach, and none for the majority's. This case seems closely akin to *Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 488 F.2d 75, 76 (5th Cir.1973) (per curiam), where a complaint was dismissed "for want of allegations establishing diversity jurisdiction, with leave to amend within 10 days." Plaintiff failed to amend, and the case was dismissed. Eighteen months later, plaintiff refiled a proper diversity complaint; the Fifth Circuit held that the earlier dismissal was not res judicata on the issue of diversity jurisdiction. I believe a similar result is called for here, especially since the Virginia court did not explicitly give Dozier leave to amend. *See also Smith v. McNeal,* 109 U.S. 426, 431, 3 S.Ct. 319, 321, 27 L.Ed. 986 (1883) (first action was dismissed for failure to allege that title was disputed and that defendants resided in Tennessee; this failure to "state the jurisdictional facts" was no bar to a second action); *cf. Johnson v. Boyd-Richardson*

*Co.,* 650 F.2d 147, 148 (8th Cir.1981) (plaintiff misnamed the defendant corporation and failed to amend when given 15 days to do so; a second action correctly naming the defendant was not barred); *Lemmon v. Cedar Point, Inc.,* 406 F.2d 94, 95 n. 2 (6th Cir.1969) (dictum) (affirming dismissal for failure to properly allege $10,000 in controversy, but noting that "this deficiency can be cured by amendment ... since it is apparent that jurisdiction does in fact exist").

The majority argues that *McNeal* should be regarded as "superseded" because it was written in a day when liberal amendment of pleadings was not allowed. Maj. op. at 1192. The *Costello* Court, however, cited with approval several similar cases of equal vintage.[13] Moreover, I am reluctant to ignore a Supreme Court precedent merely because it is old, when it has never been overruled either expressly or by implication; especially so when cases such as *Mann* and *Johnson* show that modern courts still use similar reasoning. There is a time and place for such action, but this is not it. *See* Kniffin, *Overruling Supreme Court Precedents: Anticipatory Action by United States Courts of Appeals,* 51 Fordham L.Rev. 53, 88 (1982) (lower court should satisfy itself that the Supreme Court is "highly likely" to depart from the precedent and that "greater justice to both parties will be accomplished thereby").

The majority decision also creates a conflict with the Fifth Circuit's opinion in

12. The majority suggests that the Virginia district court, if it intended to permit Dozier to refile an amended complaint in federal court, would have granted leave to amend rather than dismissing. Maj. op. at 1194. However, dismissal without prejudice would be a reasonable action for the court to take where it did not expect the plaintiff to amend, but did not want to foreclose the possibility of doing so. In this case, the Virginia court had no reason to think that Dozier could successfully amend, since he lacked complete diversity.

13. *See Swift v. McPherson,* 232 U.S. 51, 56–57, 34 S.Ct. 239, 241, 58 L.Ed. 499 (1914) (plaintiff brought suit to enforce a land-sale contract but later asked to have the suit dismissed (over the defendant's objection) when the market price dropped below the contract price; the earlier dismissal was no bar to a second suit brought

after the market price had risen again); *St. Romes v. Levee Steam Cotton-Press Co.,* 127 U.S. 614, 619, 8 S.Ct. 1335, 1338, 32 L.Ed. 289 (1888) (earlier suit was dismissed because plaintiff failed to join necessary defendants; res judicata does not bar a second suit on the same cause of action); *House v. Mullen,* 89 U.S. (22 Wall.) 42, 46, 22 L.Ed. 838 (1875) (earlier suit was dismissed because plaintiff failed to allege that co-plaintiffs had an interest in the suit; the plaintiff "should be at liberty to bring another bill, with proper parties, in regard to the subject-matter of the first one"). These cases are all cited in *Costello,* 365 U.S. at 286, 81 S.Ct. at 545, for the proposition, *id.* at 285, 81 S.Ct. at 545, that "[a]t common law, dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim."

*Mann.* The majority concedes that *Mann* is partly inconsistent with its proposed rule, maj. op. at 1192 n. 4, and strains mightily to distinguish this case on its facts, *id.* at 1193 n. 7. The attempted distinction, however, does not withstand analysis.[14] On the narrow point of res judicata at issue here, we should be reluctant to go our separate way unless we are firmly convinced that the Fifth Circuit is wrong.[15] This is doubly so since Supreme Court precedent suggests, if it does not command, that the Fifth Circuit has the better of the argument.

In closing, I stress the policy concerns underlying my dissent. Presumably a litigant assisted by competent counsel would have originally alleged more than $10,000 actual damages and would not have sued a nondiverse defendant. The Virginia court would then in all probability have accepted jurisdiction over the claim and proceeded to decide it on the merits. Even if it turned out after trial that damages were less than $10,000, jurisdiction would not have been lost.[16] Dozier, unfortunately, chose to proceed pro se, and failed to do these obvious things.[17] The question before us is whether he should have a second chance.

It is a commonplace that courts should construe the pleadings "to do substantial justice." Fed.R.Civ.P. 8(f). Here, the cost to the defendant to defend based on an obvious pleading defect is relatively small. Thus, "substantial justice" to Dozier requires that we not use the doctrine of res judicata to turn a dismissal for inartful pleading into a lock on the courthouse door. Dozier should have a second chance to cure his defective allegation of jurisdictional amount.[18]

---

14. The majority asserts that *Mann* involved a defect (lack of diversity) that could in theory be cured by a new occurrence, whereas this case does not. Maj. op. at 1193 n. 7. However, just as lack of diversity can be cured if a party moves to another state, the absence of $10,000 actual damages can be cured by a change in the underlying facts, as when the complainant suffers additional damages after filing his original complaint.

More basically, the majority seeks to confine *Mann* to a convenient cubbyhole that bears no relation to the facts or rationale of the case. The majority asserts that *Mann* stands for the legal proposition that a jurisdictional defect must be *theoretically* curable by a new event (change of residence in *Mann*). If so, the court will not ask the plaintiff to show that such a new event took place. The *Mann* opinion, however, never suggests that a change of residence either took place or was in any way relevant to its holding.

15. See, e.g., *Rockford League of Women Voters v. United States Nuclear Regulatory Comm'n,* 679 F.2d 1218, 1221 (7th Cir.1982); *Aldens, Inc. v. Miller,* 610 F.2d 538, 541 (8th Cir.1979) ("we strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow"); *cf. Brown Transp. Corp. v. Atcon, Inc.,* 439 U.S. 1014, 1017–21, 99 S.Ct. 626, 628–30, 58 L.Ed.2d 687 (1978) (White, J., dissenting from denial of certiorari) (listing recent cases in which the Supreme Court was unable to grant certiorari to resolve conflicts among the circuits or conflicts with its own decisions).

16. The majority notes that had the district court reached the substance of Dozier's claim that he had suffered $16,000 in actual damages, it might have found no jurisdiction on the ground that Dozier to a legal certainty could not legitimately claim more than $10,000 in actual damages. Maj. op. at 1193 & n. 8. That is possible, but this case arises from a judgment on the pleadings, and we must assume that there is more than $10,000 in controversy, as Dozier claims.

17. Contrary to the majority's suggestion, maj. op. at 1195, Dozier is *not* an attorney. His professional card, attached to his complaint, states that he is an "attorney at law" but also states: "Legal Practice Restricted to Article 10-Section 32 of the Maryland Code." That section prohibits any person from accepting money for "advice or service as an attorney at law without having been admitted to the bar." The obvious inference is that Mr. Dozier is not a member of the Maryland bar, notwithstanding his contrary representation to the Virginia district court.

18. I do not suggest that a plaintiff can file a defective allegation of jurisdiction, have it rejected, refile a second defective complaint, have that rejected, and so on ad infinitum. If that happens, the district court in its discretion can refuse to consider a new pleading. That case, however, is not before us.