# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 13, 2014

## IN RE: HANNAH W., ET AL.

### Appeal from the Juvenile Court for Roane County
### No. 2012-JC-276    Dennis Humphrey, Judge

---

### No. E2013-02384-COA-R3-PT-FILED-APRIL 3, 2014

---

The Juvenile Court terminated the parental rights of Ralph D.M. ("Father") to the minor twin children Alexis W. and Hannah W. ("the Children") on the grounds of abandonment by willful failure to visit pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(i), substantial noncompliance with the permanency plan pursuant to Tenn. Code Ann. § 36-1-113(g)(2), and persistent conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). Father appeals the termination of his parental rights asserting that he is neither the biological father nor the legal father of the Children and, therefore, had no parental rights to the Children to be terminated. We find and hold that the evidence does not preponderate against the Juvenile Court's finding by clear and convincing evidence that Father is the Children's legal father, that grounds existed to terminate Father's parental rights, and that the termination of Father's parental rights was in the Children's best interest. We affirm the termination of Father's parental rights to the Children.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Ralph D.M., Harriman, Tennessee, pro se Appellant.

Robert E. Cooper, Jr., Attorney General and Reporter; and Ryan L. McGehee, Assistant Attorney General for the appellee, State of Tennessee Department of Children's Services.

**OPINION**

**Background**

In June of 2013, the State of Tennessee Department of Children's Services ("DCS") filed a petition seeking to terminate the parental rights of Father to the Children ("the Petition").[1] Father filed a *pro se* response to the Petition alleging, in part, that he was neither the biological nor the legal father of the Children. The case proceeded to trial in September of 2013. Father made no appearance at trial.

The Children's DCS family services worker, Tommy Eckles, testified at trial. Mr. Eckles testified that DCS had identified Father as the legal father of the Children. Mr. Eckles testified that he had spoken with Father and informed Father that the Children were in State custody.

Mr. Eckles testified that during the four month period preceding the filing of the Petition, Father had not visited with the Children at all. He further testified that Father was not in jail or incapacitated during this time period such as would have prevented Father from visiting with the Children. Mr. Eckles testified that Father last visited with the Children on January 7, 2012, several days after the birth of the Children and almost a year and a half prior to the filing of the Petition. Mr. Eckles testified that DCS made the Children available for visitation. Mr. Eckles gave Father a copy of the criteria for termination of parental rights, which Mr. Eckles testified includes an explanation of a parent's duty to visit the children. Mr. Eckles testified that Father appeared to understand the contents of the criteria. Father has paid no child support for the Children during the entire time the Children have been in State custody.

Mr. Eckles testified that a permanency plan ("Permanency Plan") was created for the Children in February of 2012. Father was invited to attend the development of the Permanency Plan, but failed to show up. The Permanency Plan was ratified by the Juvenile Court in April of 2012. Mr. Eckles provided Father a copy of the Permanency Plan by going to Father's home and handing it to Father. Father had no questions for Mr. Eckles about his responsibilities under the Permanency Plan.

The Permanency Plan required Father to undergo an alcohol and drug assessment and follow all recommendations, undergo a mental health assessment and follow all recommendations, apply for TennCare through DHS, complete a domestic violence

---

[1]The petition stated that the biological mother's parental rights to the Children had been terminated previously.

-2-

education class, complete a parenting class, and maintain contact with DCS. Mr. Eckles testified that Father completed none of the action steps required of him under the Permanency Plan. Mr. Eckles testified that DCS provided Father with "resources, places for him to go, addresses and phone numbers," and offered Father rides to get to those places, but Father declined those offers.

Mr. Eckles explained that the Children were taken into State custody because they were born drug exposed. Mr. Eckles testified that when the Children were born, Father was under the influence of drugs, was not appropriate, and had had previous cases with DCS. Mr. Eckles testified that Father had domestic violence issues and that there were concerns about Father's mental health. Mr. Eckles testified that none of the these conditions had been resolved at the time the Petition was filed, and Father had taken no steps to remedy the conditions. Mr. Eckles testified that Father never has indicated a willingness to assume custody of the Children. In fact, Father never made any statements to Mr. Eckles regarding the Children.

Mr. Eckles was asked if there were any other conditions which would make Father's home inappropriate for the Children, and he testified that the Children's biological mother was living there and that her parental rights to the Children previously had been terminated. Mr. Eckles also was asked if the physical environment of Father's home was healthy and safe, and he testified that Father recently had moved in with his parents, and because they would not allow Mr. Eckles into their home, Mr. Eckles could not confirm if the home was healthy and safe.

Mr. Eckles testified that Father has a criminal history including violent crimes. This history includes domestic violence and "run[ning] people off his property with a weapon." Mr. Eckles also testified that to his knowledge Father has done nothing to resolve his substance abuse issues. Mr. Eckles does not believe that the conditions that caused the Children to be taken into State custody could be remedied at an early date.

At the time of trial, the Children were in foster care with a family who had expressed an intention to adopt them should they become available for adoption. Mr. Eckles testified: "It's a two family home, both parents working. They had two teenage boys. The girls are getting along well. They are meeting all the girls' needs, physically and emotionally, medical. The girls have been in day care for over a year now. They're in therapy, and they're thriving." The Children were placed with their foster family immediately upon being released from the hospital after their birth and have remained there since that time. Mr. Eckles testified that it was his opinion that it was in the Children's best interest for Father's parental rights to be terminated.

After trial, the Juvenile Court entered its detailed order on September 23, 2013 terminating Father's parental rights to the Children after finding and holding, *inter alia*:

As required by Tenn. Code Ann. §36-1-113(k), the Court makes the following findings of fact by clear and convincing evidence based on the testimony of witnesses, the exhibits presented during the trial of this cause, as well as the entire record in this action.

The subject children entered the custody of the State of Tennessee on January 30, 2012, pursuant to a protective custody order entered by the Court. DCS filed a petition alleging that the children were dependent and neglected children due to pre-natal drug exposure. The children were born on January 3, 2012. Upon entering the hospital for their birth, [the biological mother] tested positive for oxycodone and benzodiazepine; she did not have a valid prescription for either substance. Both children were born testing positive for opiates and received morphine treatment for neonatal abstinence syndrome. Upon further investigation, it was determined that the family had extensive history with DCS and that the mother had previously lost custody of her other seven children, primarily for substance abuse. These subject children, [the Children], were removed from the home due to domestic violence between the parents and persistent drug use and intoxication of the parents, rendering the home unsafe for these medically fragile children. On April 24, 2012, the Court found by clear and convincing evidence that the children were dependent and neglected in the care of [Father] due to: the drug exposure of these infants resulting in them suffering withdrawal symptoms, drug use in the home, and domestic violence between the parents. DCS developed a permanency plan for the family on February 21, 2012; the father chose not to attend this meeting despite numerous attempts to engage him in this process by Case Manager Tommy Eckles. The permanency plan was ratified and made an order of this Court on April 24, 2012. A copy of the permanency plan along with the Criteria and Procedures for Termination of Parental Rights was hand delivered to [Father] by Case Manager Tommy Eckles. DCS did make reasonable efforts to engage the father in the permanency plan. Case Manager Tommy Eckles testified that he made repeated attempts to maintain contact with the father by telephone and mailings; further, Case Manager Eckles did make repeated attempts to locate the father at his residence. Case Manager Eckles offered to drive the father to meetings and to service appointments. Case Manager Eckles scheduled child and family team meetings and the permanency plan meeting for the father and offered transportation to him. Case Manager Eckles provided the father with resources and services to assist

him in making progress under the permanency plan; the father refused all attempts by Case Manager Eckles to assist him and failed to even make the most minimal efforts to improve his condition. The father did not complete any of the tasks under the permanency plan. The father last visited with the children on January 7, 2012. Since that time, the father has not requested visitation and has not attempted to visit the children despite numerous attempts by Case Manager Tommy Eckles to set up visitation for the father. The father has not ever paid any child support or provided any necessities for the minor children. The Court finds that it is in the best interest of these minor children that the father's rights be terminated.

**B. Conclusions of Law:** Under Tennessee law, termination of parental rights must be based on a finding by the court by clear and convincing evidence that (1) the grounds for termination of parental rights have been established; and (2) termination of the parent's or guardian's rights is in the best interest of the child. Tenn. Code Ann. §36-1-113(c).

Here, the Court concludes that there is clear and convincing evidence to support grounds for termination of [Father's] parental rights under Tenn. Code Ann. §36-1-113(g). In addition, the Court concludes, based on clear and convincing evidence that termination of [Father's] parental rights is in the children's best interest. Each ground is discussed in turn.

### 1. Abandonment - Failure to Visit
### T.C.A. §§ 36-l-113(g)(1) and 36-l-102(1)(A)[(i)]

In this case, pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)[(i)], the Court finds that there is clear and convincing evidence that the father knew that his children were in DCS custody because Case Manager Tommy Eckles spoke with the father in person and told him that the children were in foster care. Further, Case Manager Eckles did inform the father that he did have the duty to visit the children and that his failure to visit the children could result in the termination of his parental rights.

Case Manager Eckles made numerous attempts to set up visitation with the father by contacting him via telephone, mail, and by meeting with him at his residence. Further, Case Manager Eckles offered to transport the father to visits with the children. The father was not incarcerated or incapacitated in any way during the time his children were in foster care that would render him unable to visit them. Despite Case Manager Eckles' substantial reasonable efforts, the father did not ever visit the

children after they entered foster care; the father last saw the children on January 7, 2012, [four] days after their birth.

## 2. Substantial Noncompliance with the Permanency Plan
### T.C.A. §§ 36-1-113(g)(2) and 37-2-403(a)(2)

In this case, pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2), the Court finds that there is clear and convincing evidence that the father failed to substantially comply with the permanency plan, despite reasonable efforts by the Department. After the children entered state custody, DCS created a permanency plan for them. The permanency plan listed a number of requirements narrowly tailored to remedy the conditions which lead [sic] to the children being placed in foster care. The requirements were necessary to have been completed to allow the children to return home safely. The permanency plan gave [Father] until June 30, 2012 to satisfy the requirements under the permanency plan.

The permanency plan required [Father] to: complete an alcohol and drug assessment by April 15, 2012 and follow all recommendations; apply for TennCare through the DHS office, if necessary, by April 1, 2012; participate and complete domestic violence education and/or counseling; complete a mental health assessment by April 15, 2012, and follow all recommendations; enroll in and complete parenting classes; stay in contact with the foster care case manager; and inform the foster care case manager of any change in his circumstances. DCS explained the requirements and responsibilities to [Father].

The Juvenile Court ratified the plan as in the best interest of the minor children and found that the requirements for [Father] were reasonably related to remedying the reasons for foster care on April 24, 2012. [Father] did not substantially comply with the permanency plan. [Father] did not: set up an alcohol and drug assessment; apply for TennCare, participate in domestic violence education or counseling; complete a mental health assessment; participate in parenting classes; or stay in contact with the foster care case manager.

DCS did make reasonable efforts to assist [Father] to satisfy the requirements for him under the permanency plan. Specifically, Case Manager Eckles made repeated attempts to contact [Father] by telephone and mailings; made repeated attempts to visit the father at his residence; made multiple offers to transport the father to meetings and to service providers; made repeated attempts to set up meetings, both personal meetings for needed services and Child and Family Team Meetings; arranged

for paternity testing; and made multiple offers to set up or assist in setting up services to assist the father in completing the tasks under the permanency plan.

### 3. Persistent Conditions
### T.C.A. §§ 36-l-113(g)(3)

In this case, pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2), the Court finds that there is clear and convincing evidence that the conditions which lead [sic] to the necessity for foster care do still persist to this day and that there are other conditions in the home, which in all reasonable probability, would result in further abuse or neglect to the minor children.

The children entered foster care due to substance abuse in the home which rendered the children drug exposed at birth resulting in a diagnosis of neonatal abstinence syndrome for the children; there were also concerns of domestic violence in the father's home. The conditions which led to the removal of the children do still persist to this day. [Father] has not sought treatment for drug abuse, mental health issues or domestic violence, rendering the home unsafe for the children's return. There is little chance that these conditions can be remedied at an early date because for the last twenty-one months, the father has failed to make even minimal efforts to remedy these conditions despite reasonable efforts by DCS.

### 4. Best Interest

Under Tenn. Code Ann. §36-1-113(i)(1) [sic], the Court is required to find that termination of parental rights is in the child's best interest.

In this case, the Court finds that there is clear and convincing evidence that termination of [Father's] parental rights is in the best interest of the children in that [Father] has not made changes in his conduct or circumstances that would make it safe for the children to go home. [Father] has not made even minimal efforts under his permanency plan which renders his home unsafe for the children to return to. Despite reasonable efforts by DCS, the father has failed to make lasting change in his circumstances. [Father] has not maintained any visitation with the children and in fact has not visited the children even once since January 7, [2012], [four] days after their birth. The children do not have a meaningful relationship with [Father]. The children have been in the same pre-adoptive foster placement since they entered foster care when the children were less than one month old. A change in caretakers at this time, after living with the same resource family for over one year, would be detrimental to the children. [Father] has not sought treatment for his substance abuse which renders

-7-

him consistently unable to safely care for the children. The father has shown little or no interest in the welfare of these children and has provided no support for the benefit of these children. The children are placed together and are known to have a strong bond with their resource family; the children's foster parents wish to adopt them.

Father appeals the termination of his parental rights to this Court.

## Discussion

Although not stated exactly as such, Father raises only one issue on appeal: whether the Juvenile Court erred in terminating his parental rights to the Children when Father asserts that he is neither the biological nor the legal father of the Children.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

To begin, we note that Father is proceeding with this appeal *pro se*. In *Whitaker v. Whirlpool Corp.* this Court observed that:

*Pro se* litigants are entitled to fair and equal treatment. *See Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983). *Pro se* litigants are not, however, entitled to shift the burden of litigating their case to the courts. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983). *Pro se* litigants are not excused from complying with the same substantive and procedural requirements that other represented parties must adhere to. *See Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).

*Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).

Father has demonstrated that he is capable of participating in this case as is shown by the fact that Father filed a response to the Petition in the Juvenile Court, filed a timely notice of appeal of the Juvenile Court's order, filed a brief and a reply brief on appeal, and filed a properly completed affidavit of indigency on appeal. Although Father filed a reply to the Petition, Father made no appearance whatsoever at trial. Father also filed with this Court an executed affidavit of indigency. We remanded this case to the Juvenile Court to consider Father's affidavit of indigency. Upon remand, the Juvenile Court determined that Father was indigent for the purpose of maintaining an appeal. The record is devoid of any evidence that Father filed an affidavit of indigency prior to trial.

In addition to filing a brief and a reply brief on appeal with this Court, Father attempted to file with this Court various other documents, which were not properly admitted at trial and are not properly included in the record on appeal. As these documents were not admitted at trial, and are not properly before us on appeal, we will not consider them.

In his brief on appeal, Father asserts that he is neither the biological father nor the legal father of the Children. Father alleges a legal defect in his marriage to the Children's biological mother and also asserts that he was not considered the father of other children born to the biological mother and, therefore, should not be considered the father of the Children. Father's allegations, however, are not supported by the record on appeal. The only evidence in the record on appeal with regard to parentage is the testimony of the DCS family services worker, Tommy Eckles, that DCS had identified Father as the legal father of the Children. There is no evidence whatsoever in the record on appeal to contradict this evidence. The evidence in the record on appeal does not preponderate against the Juvenile Court's finding by clear and convincing evidence that Father was the legal father of the Children at the time of the trial. As such, we find no error in the Juvenile Court's determination that Father was the legal father of the Children at the time of trial.

The record reveals that it was Father's own choices which resulted in the record being devoid of evidence supporting Father's arguments. Father chose not to file an affidavit of indigency prior to trial, chose not to request an attorney to assist him at trial, and chose not to make any appearance whatsoever at the trial. Father has demonstrated that these were deliberate choices, and Father has provided no excuse whatsoever for his failure even to appear at trial.

Although Father contests on appeal neither grounds nor best interest, we will review both because of the importance of this decision to the Children. The Juvenile Court terminated Father's parental rights to the Children on the grounds of abandonment by willful failure to visit pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(i), substantial noncompliance with the permanency plan pursuant to Tenn. Code Ann. § 36-1-113(g)(2), and persistent conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). In pertinent part, Tenn. Code Ann. § 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4;

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home; . . . .

Tenn. Code Ann. § 36-1-113(g) (Supp. 2013). As pertinent to this appeal, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102 (1)(A)(i) (2010).

In its September 23, 2013 order the Juvenile Court made specific and detailed findings that clear and convincing evidence was proven that grounds existed to terminate Father's parental rights to the Children pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1), (g)(2), and (g)(3). As discussed more fully above, the evidence in the record on appeal does not preponderate against these findings made by the Juvenile Court by clear and convincing evidence. The Juvenile Court also made specific and detailed findings that it was in the Children's best interest for Father's parental rights to be terminated. Again, we need not reiterate the evidence as it is discussed fully above, and the evidence in the record on appeal does not preponderate against the Juvenile Court's findings made by clear and convincing evidence. As grounds for termination were proven by clear and convincing evidence and it was proven by clear and convincing evidence that the termination of Father's parental

rights was in the Children's best interest, we find no error in the Juvenile Court's termination of Father's parental rights to the Children.

## **Conclusion**

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Ralph D.M.

_____
D. MICHAEL SWINEY, JUDGE